[No. 13748. *En Banc.* January 26, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. POWLES &
COMPANY, INCORPORATED, *Appellant*.[1]

MASTER AND SERVANT—WORKMEN'S COMPENSATION—EXTRA HAZARD-
OUS EMPLOYMENTS—POWERS OF INDUSTRIAL INSURANCE COMMISSION—
DELEGATION OF LEGISLATIVE POWERS—STATUTES. Under Rem. Code,
§ 6604-2, providing that the workmen's compensation act is intended
to apply to all extra hazardous occupations and that "if there be
or arise" any extra hazardous occupation or work other than those
enumerated, it shall come under the act and its rate of contribution
be determined by the industrial insurance commission, no power is
delegated to the commission to decide as a legislative determination
that an occupation other than those enumerated is extra hazardous,
in the absence of any express delegation of such power.

SAME — WORKMEN'S COMPENSATION — EXTRA HAZARDOUS EMPLOY-
MENTS—WHAT ARE. A mercantile company engaged in the commis-
sion business, dealing in fruit and produce, handled in boxes, crates,
and sacks weighing less than 150 pounds, accessibly held in store-
rooms for immediate sale, and employing teamsters, receiving and
shipping clerks, potato sorters and porters, is not engaged in an
extra hazardous occupation, within the meaning of the workmen's
compensation act, and the industrial insurance commission therefore
has no power to recognize such a business as extra hazardous or
order it to be brought under the terms of the statute.

Appeal from a judgment of the superior court for King
county, Jurey, J., entered August 16, 1916, upon findings
in favor of the plaintiff, in an action to recover a contribution
to the accident fund provided for by the industrial insurance
act, tried to the court. Reversed.

*James Kiefer*, for appellant.

*The Attorney General* and *Howard Waterman, Assistant*
(*C. E. Arney*, of counsel), for respondent.

PARKER, J.—This action was commenced by the industrial
insurance commission, in the superior court for King county,
seeking recovery from the defendant of contribution to the

[1]Reported in 162 Pac. 569.

accident fund provided for in our workmen's compensation act. Trial in the superior court without a jury resulted in judgment against the defendant, from which it has appealed to this court.

Recovery is sought from appellant upon the theory that it is operating a warehouse in connection with its mercantile business and, therefore, it is required to contribute to the accident fund provided for in the workmen's compensation act, because the operation of a warehouse is the carrying on of extra hazardous work within the meaning of the act and a resolution of the commission adopted in pursuance of what it conceived to be its power under section 2 of the act (Laws 1911, p. 346), reading as follows:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extra hazardous' wherever used in this act, to wit:

"Factories, mills and workshops where machinery is used; printing, electrotyping, photo-engraving and stereotyping plants where machinery is used; foundries, blast furnaces, mines, wells, gasworks, waterworks, reduction-works, breweries, elevators, wharves, docks, dredges, smelters, powderworks; laundries operated by power; quarries; engineering works; logging, lumbering and ship-building operations; logging, street and interurban railroads; buildings being constructed, repaired, moved or demolished; telegraph, telephone, electric light or power plants or lines, steam heating or power plants, steamboats, tugs, ferries and railroads. If there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, and its rate of contribution to the accident fund hereinafter established, shall be, until fixed by legislation, determined by the department hereinafter created, upon the basis of the relation which the risk involved bears to the risks classified in section 4." Rem. Code, § 6604-2.

The commission having concluded that the operation of a warehouse is an extra hazardous work and that it had power to so determine and fix the rate of contribution to the accident fund therefor, by virtue of the power conferred upon it in the concluding sentence above quoted, on May 3, 1915, adopted the following resolution:

"Whereas, It is provided by section 2 of the workmen's compensation act of the state of Washington,—

" 'If there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, and its rate of contribution to the accident fund, hereinafter established, shall be, until fixed by legislation, determined by the department hereinafter created, upon the basis of the relation which the risk involved bears to the risks classified in section 4'; and Whereas, It has been demonstrated and proven that the operation of mercantile and storage warehouses and the occupations of teamsters, truck drivers, handlers of freight, auto truck drivers and helpers are extra hazardous, therefore,

"Be It Resolved, That after June 30, 1915, every employer in the state of Washington, who is engaged in extra hazardous employment under the workmen's compensation act, employing teamsters, truck drivers, handlers of freight, auto truck drivers and helpers, shall make contribution to the accident fund upon the wages or earnings of such workmen at the basic rates of his class as provided in section 4; and

"Be It Further Resolved, That all transfer companies shall hereafter make contribution to the accident fund on the wages of all their drivers of freight and drayage vehicles and their helpers, such contribution to be made at the basic rate of 2 per cent and listed in Class 21. This also includes all operations of transfer companies formerly listed in Class 6.

"Be It Further Resolved, That all firms or individuals operating storage warehouses, or warehouses in connection with mercantile establishments, operated either independently or in connection with other business shall hereafter make contribution to the accident fund on the wages of their workmen including teamsters employed in connection with said warehouse at the basic rate of 2 per cent and listed in Class 21."

It is contended in appellant's behalf that the concluding sentence of section 2 (Id., § 6604-2) of the act, above

quoted, commencing with the words "if there be or arise," amounts to an unconstitutional delegation of legislative power to the commission, in so far as that sentence may be construed as conferring upon the commission power to decide, as a legislative determination, that any "occupation or work," other than those specifically enumerated, is extra hazardous. As we proceed we shall find that the proper construction rather than the constitutionality of section 2 is determinative of this case. Now there are two powers which the commission has assumed to exercise by the adoption of its resolution. First, it determined that certain occupations are extra hazardous which are not specifically enumerated in the act as such; and second, it determined the rate of the employers' required contribution therefor to the accident fund. It is not contended that the latter is an exercise of an unconstitutionally delegated legislative power. That is, it is conceded that, as to all extra hazardous occupations which come within the act for which no contribution rate to the accident fund is prescribed by the act the rate therefor shall, until fixed by legislation, be determined by the commission "upon the basis of the relation which the risk involved bears to the risks classified in section 4." Since these quoted words, together with the provisions of § 4 (Id., § 6604-4) of the act, furnish a fair standard for determination of the proper rate of contribution in such cases, if there be any, we think it quite safe to assume, as is here conceded, that in so far as § 2 authorizes the commission to determine the rate in such cases, it does not unconstitutionally delegate legislative power to the commission. While this power to determine the rate in such cases, if there be any, is given to the commission by the express language of § 2, the power to determine what occupation or work is extra hazardous, in addition to those specifically enumerated as such, is not so given. It seems plain, therefore, that whatever power or duty the commission may have touching the ascertainment of what occupations are extra hazardous, other than those

specifically enumerated, such power or duty is only inferable from and incidental to the express power to fix the rate in such cases, if there be any.

The legislature, no doubt, has the power to determine directly, by its own enactment, what occupations are extra hazardous, as it has done by the specific enumeration in § 2 of the act. The legislature may have the power to delegate such power to the commission, accompanied by some legislative prescribed standard by which such determination shall be made; but that it could constitutionally delegate such power to the commission without prescribing some such standard, suggests, to say the least, grave doubt. We look in vain in this act for any prescribed standard by which the commission shall determine what occupation or work, other than those specifically enumerated, are extra hazardous. The line between legislative and administrative functions is often uncertain and difficult to ascertain when it comes to determining what powers may be delegated by the legislature to administrative officers. The power here assumed to be exercised by the commission, other than the power of determining the contribution rate, is manifestly very close to that line, if, indeed, it is not upon the legislative side thereof. This is a power, if existing, of possibly far reaching effect. By the determination of the commission, if it has the power here claimed, all right of the employee to seek redress in the courts from his employer by reason of the latter's negligence is taken away, and at the same time the employer is compelled to contribute to the accident fund from which employees, other than his own, may be compensated when injured; and all this regardless of the fault of any one, save as to the very few exceptions specified in the act. More, for want of a prescribed standard, it might well be argued that the commission, if its power exists as here claimed, has delegated to it the power of determination as to what occupation or work is extra hazardous to the same extent that such determination might be made by the legislature itself. These

considerations suggest grave caution on the part of the courts to attribute to the legislature an intent to delegate such far reaching power to the commission, in the absence of language in the act expressly so declaring. Plainly there is no such express declaration in this act.

So far we have had in mind only such a determination under the power here claimed as by its own making has the effect of bringing the employee and employer under the act. That is such a determination as, by the fact of its making, changes the rights, remedies and liabilities of the employer and employee, each as against the other, in the same manner and with like effect as if such change were brought about by direct legislative declaration. We think there must be here recognized a distinction between the force and effect of such a *determination* and the force and effect of the *fact* that a given occupation or work is extra hazardous. We are not prepared to say but that "there may be or arise" an extra hazardous occupation, other than those specifically enumerated, which may be so plainly within the spirit of the act that the commission should recognize it as such and determine the rate to be contributed therefor to the accident fund, and proceed with reference thereto as it is authorized to do with reference to those occupations and works specifically enumerated. This may suggest a difficult problem as to the practical workings of the law touching occupations other than those specifically enumerated, but we assume and concede, nevertheless, for the purpose of argument, that the commission does possess powers and duties to this extent. If there be or arise any such plainly hazardous occupation as to bring it under the act, we apprehend that it would come under the act regardless of whether the commission so determined or not. In other words, it would be the fact of the existence of such extra hazardous occupation and not the determination of such fact by the commission that would bring it under the act. In view, then, of the extraordinary nature and possible far reaching effect of this assumed power

on the part of the commission, the failure of the legislature to prescribe a standard by which it may be exercised, and the failure of the legislature to confer the power upon the commission by plain and unequivocal language in the act, we are constrained to hold that such power is not possessed by the commission; in any event, not in the sense that it can be exercised and have the force of a legislative determination upon the question of occupations other than those specifically enumerated being extra hazardous.

Assuming, but not deciding, that there may "be or arise" extra hazardous occupations other than those specifically enumerated which the commission under the power given it may recognize as such, but adhering to our conclusion that in no event has the commission the power to so decide, and by such decision bring under the act, as the legislature might do by its declaration, an occupation other than those specifically enumerated, we come to the question of whether or not appellant's employees are engaged in extra hazardous occupations within the meaning of the act so as to require it to contribute to the accident fund. Appellant is engaged in the commission business in the city of Seattle, dealing in fruit and produce, selling the same to retailers. Its goods are handled in boxes, crates and sacks, none of which weigh over one hundred and fifty pounds. It operates no warehouse, unless its storeroom where it holds all its goods for sale and distribution to its customers might be considered as such. All of its goods are held in its storeroom for immediate sale in such manner as to all be accessible to its salesmen with a view of readily exhibiting them to its customers as occasion may require. Its goods are brought to its store and delivered therefrom by its own teamsters to a considerable extent, as is more or less commonly done in mercantile business. A list of its employees before us in this record shows that it has two receiving clerks, one order clerk, one teamster, two potato sorters, three shipping clerks and three porters. If these employees be engaged in an extra hazardous occupa-

tion, then the employees of practically every mercantile business, even apart from any of the occupations connected therewith which might fall within the specifically enumerated classes, would be engaged in extra hazardous occupations within the meaning of the act. We cannot believe that it is within the contemplated power of the commission to recognize a business of this nature as being one whose employees are engaged in extra hazardous occupation or work. To do so would be, it seems to us, to lose sight of the distinction which the act itself makes between occupations attended with ordinary hazards and those attended with extra hazards. It is only "*extra hazardous*" occupations which are under the act. It seems quite clear to us that appellant's employees are not engaged in such an occupation. We are not deciding that the legislature might not cause such occupations as these to be brought under the act, but only that it has not done so in this act, nor has it given to the commission the power to do so.

The judgment is reversed and the action dismissed.

ELLIS, C. J., MORRIS, MAIN, MOUNT, HOLCOMB, and CHADWICK, JJ., concur.

FULLERTON, J., concurs in the result.