**Edward W. OSTROWSKI and Delephine H. Ostrowski, Plaintiffs,**

v.

**The ROMAN CATHOLIC ARCHDIOCESE OF DETROIT, St. Sylvester School of Religion, Rita May Fisher and the United States Department of Labor, Office of Workers Compensation Programs, Defendants.**

Civ. No. 77–72519.

United States District Court,
E. D. Michigan, S. D.

Sept. 18, 1979.

**202**

Ferdinand M. Peters, Koperski & Peters, Warren, Mich., for plaintiffs.

Henry J. Maher, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P. C., Detroit, Mich., for defendants Archdiocese, St. Sylvester, and Fisher.

David F. Wightman, John C. Nangle, Associate Regional Director, Detroit, Mich., for U. S. defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

In January, 1975, plaintiff Edward W. Ostrowski suffered injuries in an automobile accident in Michigan during the course of and arising out of his employment as an employee of the federal government. Since that time, the plaintiff has received, and continues to receive, compensation benefits from the Federal Employees Compensation Fund ("Fund") pursuant to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101–73.

The plaintiff initiated a civil action in Macomb County Circuit Court to recover damages for the injuries under the Michigan No-Fault Act against Rita May Fisher, St. Sylvester School of Religion, and the Roman Catholic Archdiocese of Detroit, who were alleged to have caused the accident. Mich.Comp.Laws §§ 500.3101–.3179. The plaintiff sought damages for the following: Pain and suffering (past, present, and future); permanent impairment in the use of his right leg, ankle, and foot; damages for medical, hospital, and nursing care expenses incurred and to be incurred in the future; damages for loss of earnings (past, present, and future).

In the instant declaratory action filed here, the plaintiff recognizes that any recovery from the tortfeasor for medical expenses and for the portion of the loss of earnings that occurred in the first three years following the accident will be barred by the No-Fault Act. Furthermore, since all of the plaintiff's medical and rehabilitative expenses and seventy-five percent (75%) of his loss of wages during the first three years following the accident have been paid by the Fund, the No-Fault Act precludes his also recovering these damages from his first party No-Fault Act insurer. Mich.Comp.Laws § 500.3109.

Benefits paid to the plaintiff by the Fund for the accident amounted to $46,255.32 through December 6, 1978. This figure consists of $41,197.62 for loss of wages and $5,058.70 for medical care expenses.

Section 8132 of FECA provides that employees who recover damages from third parties for injuries for which compensation is payable from the Fund must reimburse the Fund out of the proceeds of their recovery for such compensation.

The plaintiffs seek a declaratory judgment which either (I) construes FECA as limiting the amount the plaintiff must reimburse the Fund under 5 U.S.C. § 8132; or, alternatively, (II) declares the reimbursement provisions to be violative of the equal protection component of the due process clause of the Fifth Amendment to the United States Constitution.

## I. *INTERPRETATION OF THE REIMBURSEMENT PROVISIONS OF FECA, 5 U.S.C. § 8132*

The plaintiffs seek to interpret Section 8132 as limiting the duty of the plaintiff to reimburse the Fund out of the proceeds of his state court action by requiring reimbursement only to the extent such state court recovery is attributable to the same types of economic losses incurred, or economic benefits conferred, under FECA. Under the construction of FECA advanced by the plaintiffs, any monetary recovery attributable to pain or suffering or other causes not specially compensable under FECA would be immune from the duty to reimburse the fund.

Such an interpretation contradicts the plain language of the statute, the plain language of the regulations adopted to administer and enforce the statute, analogous case law, and the congressional purpose in enacting Section 8132, which was to reduce the cost of providing benefits under the Act by maximizing the amount of reimbursements while minimizing the costs of administering FECA.

Section 8132 of FECA provides:

"If any injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a

beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of the suit and a reasonable attorney fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury."

It is undisputed that any payments the plaintiff will receive as a result of the state court action will be "damages" paid to discharge a legal liability arising from the same injuries that gave rise to compensation under FECA, namely, for injuries occurring in the January, 1975 accident. There is no language in Section 8132 delineating two classes of damages—one of which gives rise to a duty to reimburse and one of which does not. On the contrary, by its terms the duty to reimburse encompasses all damages recovered from third parties.[1]

■ Congress expressly delegated to the Secretary of Labor the authority to promulgate regulations to administer and enforce FECA, at 5 U.S.C. § 8149:

"The Secretary may prescribe rules and regulations necessary for the administration and enforcement of this subchapter. . . ."

Pursuant to such express authority, the Secretary has promulgated a regulation to administer Section 8132. 20 C.F.R. § 10.503. Since Congress has expressly delegated to the Secretary the authority to promulgate this regulation, it is a legislative rather than interpretive regulation and as such has the force of law; moreover, even if § 10.503 were an interpretative regulation, it would be entitled to great deference by this court.

---

1. A similar attempt by a federal employee to limit the duty to reimburse the Fund under FECA following recovery from a third party was rejected in *United States v. Hayes*, 254 F.Supp. 849 (W.D.Ky.1966) (construing similar language of FECA before it was amended). In *Hayes* a federal employee receiving compensation under FECA maintained that his recovery of damages from a third party was compensation for pain and suffering, which are not specially compensable under FECA, and that, as a result, his third-party recovery should not be subject to the duty to reimburse the Fund. The Court, in rejecting his argument, stated that the reimbursement language "is clear and unambiguous, and makes no provision for the segregation or division of damages." 254 F.Supp. at 851.

*Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964).

The regulation provides:

"If any injury for which benefits are payable under the Act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, and, as a result of suit brought by the beneficiary or by someone on his or her behalf, or as a result of settlement made by him or her on his or her behalf in satisfaction of the liability of such other person on account of such injury or death, the proceeds of such recovery shall be applied as follows:

"(a) If any attorney is employed, a reasonable attorney fee and cost of collection, if any, shall first be deducted from the gross amount of the settlement.

"(b) The beneficiary is entitled to retain one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted, plus an amount equivalent to a reasonable attorney fee proportionate to any refund to the United States.

"(c) There shall then be remitted to the Office, the benefits which have been paid on account of the injury which shall include payments made on account of medical or hospital treatment, funeral expense, and any other payments made under the Act on account of injury or death.

"(d) Any surplus then remaining may be retained by the injured employee or his dependents, and the net amount of damages received by the beneficiary shall be credited against future payment of benefits to which the beneficiary may be entitled under the Act on account of the same injury or death."

█ The regulation makes no exceptions, that is, all damages recovered are subject to the duty of reimbursement established by Section 8132 of FECA.[2]

When benefits are payable from the Fund arising from a particular accident or illness, an employee's right to receive and

---

**2.** The interpretation of the reimbursement provisions of state workers' compensation laws further bolsters the Secretary's interpretation of § 8132:

"[I]t is quite clear, as the cases now stand, that the prevailing rule in the United States refused to place an employee's third party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering. Indeed, this result has been reached even when the employee had taken the trouble to put his pain and suffering into a separate suit."

Larson's Workmen's Compensation Law, § 74.-35, at 14–246, and cases cited therein.

Added support for the Secretary's position may be found in the Fifth Circuit's interpretation of the reimbursement provisions of an analogous federal workers' compensation statute, the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 933), applicable to private employment in the federal maritime jurisdiction. *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345 (5th Cir. 1966). A longshoreman, Haynes, received $5,592.25 in compensation for loss of earnings and $1,300.00 for medical expenses, for a total of $6,892.25 from his employer's workers' compensation carrier for injuries received while in the scope of his employment. When Haynes subsequently sued the third party who negligently caused his injury, the employer's workers' compensation carrier intervened to seek reimbursement. The trial court found the third party's liability to be $3,750.00 for loss of wages, $3,750.00 for pain and suffering, and $650.00 for medical expenses—a total of $8,150.00. From this total the trial court granted the workers' compensation insurer full reimbursement of $6,892.25, with the remainder going to Haynes. On appeal Haynes argued, *inter alia*, that he should not have to reimburse the workers' compensation carrier out of damages received for pain and suffering, since pain and suffering were not specially compensable under the Longshoremen's and Harbor Workers' Compensation Act. In rejecting Haynes' contention, the Fifth Circuit explained:

"[A]ppellant completely misconceives the purpose and function of the Act; the whole theory of the Act, and of similar compensation legislation, is to provide the injured workman with certain and absolute benefits in lieu of *all* common law damages. Thus the payments made by TEIA [the workers' compensation carrier] were made in place of *all* damages to which appellant otherwise would be entitled, and not just lost wages or medical expenses." 362 F.2d at 350.

Like the Longshoremen's and Harbor Workers' Compensation Act, the employee under FECA receives rapid and virtually certain, albeit somewhat limited, recovery from the employer in which the employee need not face common law defenses, e. g., contributory negligence and assumption of risk.

retain full common law damages for the accident or illness is limited by the obligation to reimburse the Fund with benefits actually received from a third party.

FECA is a workers' compensation statute for federal employees. As in all workers' compensation statutes, there is a trade-off between the respective rights of the employee and employer. The employee gains the right to prompt payment of benefits without the burden of establishing the employer's fault or meeting common law defenses; however, the recovery of the employee from his employer is limited to the terms of the compensation statute, even if this prevents the employee in a particular case from receiving benefits for each element of recovery specially allowable otherwise. The constitutionality of such trade-offs is clear. *New York Central R.R. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1916).

The interpretation of Section 8132 by the Secretary and the court in *United States v. Hayes*, 254 F.Supp. 849 (W.D.Ky.1966) (*see* footnote 1, *supra*), is in keeping with the purpose of Congress in passing the section, which was to maximize reimbursements to the Fund while minimizing the cost of administering FECA. By subjecting all recovery from third parties to the duty to reimburse, Congress has maximized the pool of dollars from which reimbursement must be made. In addition, by having only one standard for establishing the obligation to reimburse, Congress has eased the burden of administering FECA by avoiding the difficulties of distinguishing between the numerous statutory and common law causes of action found in the various states. Moreover, by applying only one standard, administrative officials are relieved of the onerous, if not impossible, burden of determining which portion of a third party recovery is attributable to elements specially compensable under the FECA and which are not; and arbitrary or fraudulent allocations of the total recovery, especially in settled cases, are minimized. Therefore, the inten-

tion of Congress to maximize reimbursements while minimizing the cost of administering FECA further bolsters the Secretary's interpretation.

In summary, the language of FECA and the regulations does not support the plaintiffs' proposed construction of Section 8132. It is clear that a recovery from a third party, whether characterized as being for pain and suffering, medical expenses, loss of wages, or prospective loss of income, is subject to the duty to reimburse the Fund for compensation payable for the same injury.[3]

## II. *CONSTITUTIONALITY OF 5 U.S.C. § 8132*

The plaintiffs next seek a declaratory judgment which declares the reimbursement provisions to be violative of the equal protection clause.

■ Acts of Congress are presumed to be constitutional. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

■ In order to overcome the presumption of constitutionality, a party must establish two elements: The first element is the existence of a classification, either in the words or application of the act in question, which gives rise to unequal treatment. The second element is that, having established the existence of such a classification, the party attacking the statute must carry the additional burden of establishing that the classification bears no rational relation to a legitimate governmental purpose. *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). The plaintiffs here cannot meet their burden on either of these elements.

### A. *Classification*

■ The plaintiffs maintain that Section 8132 divides federal employees receiving compensation under FECA into two classifi-

---

**3.** Furthermore, the plaintiff is entitled to retain one-fifth of the net amount of money received in the state court proceeding, and deduct attorney fees and costs from the gross amount.

cations—those residing in states with automobile no-fault statutes and those residing in states retaining the traditional tort causes of action for personal injuries arising from automobile accidents.

No classification appears on the face of FECA. All employees who recover damages from third parties for injuries compensable under FECA are treated the same under the Act, whether they attain their damages pursuant to a common law or statutory cause of action in a state unaffected by a no-fault statute or pursuant to a common law or statutory cause of action permitted by a no-fault statute. Any discrepancy between the net recovery of an employee whose injury is covered by a no-fault statute and an employee whose injury is covered by common law or statute using only traditional tort concepts results not from a classification made by the Congress in FECA, but rather from the decisions of the individual states regarding the proper means of compensating personal injuries.

The No-Fault Act permits a first party insurer to deduct from the first party benefits otherwise payable the amount of payments received pursuant to a workers' compensation statute. Mich.Comp.Laws § 500.-3109(1). The Michigan Supreme Court has upheld the constitutionality of this provision. *O'Donnell v. State Farm Mutual Automobile Insurance Co.*, 404 Mich. 524, 273 N.W.2d 829 (1979). However, there is no reason why a state could not write its no-fault statute where first party benefits are not reduced by workers' compensation benefits to the extent the workers' compensation insurer is reimbursed from third party recoveries for elements not specially compensable by the workers' compensation insurer. Indeed, since under the No-Fault Act deductions can be made only for benefits mandated by law, such as workers' compensation benefits "provided or required to be provided," it could be argued that only benefits paid and not subjected to mandatory reimbursement can be subtracted from first party benefits otherwise payable by the first party insurer, even under existing Michigan law.

**B. Rational Relation to Legitimate Governmental Purpose**

A rational purpose of Congress in enacting Section 8132 was to reduce the cost of the federal workers' compensation program. It is beyond dispute that reducing the cost of providing social benefits is a legitimate purpose, both in terms of total net benefits paid and the costs of administering the program. *Mathews v. Lucas*, 427 U.S. 495, 509, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).

The necessity and appropriateness of reducing the cost of the federal workers' compensation program has been recently highlighted. On September 28, 1978, the Comptroller General of the United States presented a report to the Congress of the United States regarding FECA entitled "Improvements Still Needed in Administering the Department of Labor's Compensation Benefits for Injured Federal Employees." On page one of that report appear the following ominous facts:

"Although the number of civilian employees of the Federal Government has remained fairly constant during recent years, the Federal Employees Compensation Program has grown dramatically. From fiscal year 1970 through fiscal year 1977:

—injuries reported by employees increased by 72.1 percent, from 120,625 to 207,615.

—claims increased by 70.3 percent, from 17,795 to 30,301.

—persons drawing compensation for extended periods increased by 90 percent, from 23,462 to 44,576; and

—benefits paid increased by 315.1 percent, from $131.5 million to $545.8 million. If the amount of benefits continues to increase at this rate, the Department of Labor estimates that annual benefits costs will amount to $1 billion by 1980."

Once the legitimacy of the congressional purpose in reducing the cost of providing governmental benefits under FECA is es-

tablished, the sole remaining question is whether the means adopted are rationally related to that purpose. *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). By providing only one standard requiring reimbursement from *all* damages recovered from third parties arising from injuries compensated under the Act, Congress has maximized the amount of money that will be subject to reimbursement while simultaneously reducing the cost of administering the provision by avoiding the myriad of factual and legal distinctions the plaintiffs' proposal would entail. For example, by having only one standard, Congress has avoided the difficulty of delineating, in each recovery from a third party, the proportion of damages attributable to elements of damages specially compensable under the FECA from those which are not. Furthermore, by providing only one standard of recovery, the incentive for fraud and collusion on the part of compensated employees and third parties in establishing the portions of settlements, or even verdicts, which are attributable to particular elements of damage is reduced.

In summary, Section 8132, by making all employee recoveries from third parties subject to the same duty to reimburse, the permissible congressional purposes of maintaining the fiscal viability of the compensation program by maximizing the amount of reimbursement while minimizing the cost and difficulty of administering the Act are promoted. Furthermore, the plaintiffs have failed to establish the existence of a classification by FECA which gives rise to discrimination; and the plaintiffs make no complaint regarding state law. Therefore, Section 8132 cannot be said to violate the equal protection component of the due process clause in the Fifth Amendment to the federal Constitution.

An order will be entered granting the motion of the United States Department of Labor for summary judgment.