**LORENZETTI, Paul B., Appellant,**

v.

**UNITED STATES of America.**

**No. 82–1683.**

United States Court of Appeals,
Third Circuit.

Argued April 28, 1983.

Decided June 22, 1983.

Charles Sovel (argued), Freedman & Lorry, P.C., Philadelphia, Pa., for appellant.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Peter F. Vaira, Jr., U.S. Atty., Susan Dein Bricklin, Asst. U.S. Atty., Philadelphia, Pa., William Kanter, Freddi Lipstein (argued), Attys. Appellate Staff, Civ. Div. Dept. of Justice, Washington, D.C., for appellee.

Before WEIS, HIGGINBOTHAM, Circuit Judges, and BROTMAN,* District Judge.

**OPINION OF THE COURT**

BROTMAN, District Judge:

This case arises under the Federal Employment Compensation Act, 5 U.S.C. § 8101 *et seq.* (FECA). It is an action for a declaratory judgment brought by Paul B. Lorenzetti against the United States. The dispute stems from an unresolved conflict regarding the government's right to reimbursement under the FECA and the injured party's ability to recover damages under the Pennsylvania no-fault statute, Pa.Stat. Ann. tit. 40, § 1009.101 *et seq.* (Purdon 1974). The district court, 550 F.Supp. 997, held that Lorenzetti was required to reimburse the government even though he had

---

* Hon. Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

no third party cause of action for medical expenses and wage loss, exactly the items for which the government was responsible under FECA. *See* 5 U.S.C. § 8132. The underlying issue is relatively straightforward—does § 8132 compel a government employee who has received benefits under FECA to reimburse the government, even in cases where the beneficiary of such coverage is barred by state law from including in his third party action for damages medical expenses and wage loss?

The facts of this case are undisputed. Appellant Paul Lorenzetti, an FBI agent and government employee, was injured in an automobile accident on November 21, 1977. He suffered extensive injuries and was forced to miss work for several days. Pursuant to the provisions of FECA, the federal government immediately reimbursed appellant for all medical expenses and lost wages arising out of the accident. The total amount came to $1600.24.

Following the accident, appellant instituted a third party action for damages against the driver of the car with which he collided. At the outset of the lawsuit the defense moved to bar any evidence relating to medical expenses or wage losses, predicating the motion on the recently enacted Pennsylvania no-fault statute which precludes recovery on those grounds in any third party action.[1] As a result, appellant's damage claim was reduced to items of pain and

suffering. He ultimately settled the case for $8500.00.

During the course of the third party action, the government appeared in the proceeding and asserted a subrogation lien against any recovery accruing to plaintiff. The government conceded, and the district court agreed, that the settlement was attributed solely to plaintiff's claim for pain and suffering. Nonetheless, the government still maintained that it was entitled to full reimbursement for its expenditures on Lorenzetti's behalf, pursuant to § 8132.[2] Appellant, on the other hand, refused to comply with the government's request, arguing that because he was barred from recovering damages for medical expenses and lost earnings, he should not be required to reimburse the government for its expenditures for those items.

There is little argument as to the operation of this statute in most instances. The federal employee, if injured during the performance of his duties, is immediately entitled to payment for all related medical bills and is compensated for lost earnings. If he recovers damages as a result of that accident, the injured party must reimburse the government for its costs. *See e.g., United States v. Crystal,* 39 F.Supp. 220 (N.D.Ohio 1941). Typically, the refund will be subtracted from the employee's total damage award, regardless of whether the net amount allocated to medical expenses

---

1. The Pennsylvania No-Fault Motor Vehicle Insurance statute, Pa.Stat.Ann. tit. 40, § 1009.101 *et seq.* (Purdon 1974), reads in pertinent part as follows:

   > Tort liability is abolished with respect to any injury that takes place in the State in accordance with the provisions of this Act if such injury arises out of the maintenance or use of a motor vehicle, except that:
   >
   > (5) A person remains liable for damages for noneconomic detriment (pain, suffering, inconvenience, physical impairment, and other nonpecuniary damage ... § 1009.103 if the accident results in:
   >
   > (B) the reasonable value of reasonable and necessary medical and dental services ... in excess of $750 ...

   Pa.Stat.Ann. tit. 40, § 1009.301(a)(5).

2. The government concedes that under FECA appellant can deduct the portion of that

amount which was used to pay his attorney's fees—in this case approximately $500.00. FECA reads in relevant part:

> If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury receives money or other property in satisfaction of that liability as the result of suit, or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States and credit any surplus on future payments of compensation payable to him for the same injury.

5 U.S.C. § 8132.

equals the cost incurred by the government with respect thereto. *See United States v. Hayes,* 254 F.Supp. 849 (W.D.Ky.1966). The dispute in the instant action arises solely because Pennsylvania, the state in which the accident occurred, has recently passed a no-fault statute which bars an injured party from suing for medical expenses and/or lost wages. Pa.Stat.Ann. tit. 40, § 1009.101 *et seq.* As a result of this bar, appellant was limited to an action exclusively for pain and suffering—he had no legal cause of action for other damages which may have resulted from the accident.

The government argues that § 8132 of FECA requires appellant to reimburse it for any expenses it incurred on his behalf. In this instance reimbursement is sought because the government contends that appellant did recover damages resulting from a legal liability created under the circumstances which led to the government's initial responsibility. 5 U.S.C. § 8132. The district court concurred with the government's position and in doing so, it relied heavily on the reasoning employed by the court in *Ostrowski v. Roman Catholic Archdiocese, etc.,* 479 F.Supp. 200 (E.D.Mich. 1979), *aff'd* 653 F.2d 229 (6th Cir.1981). After discussing the language of the statute itself and noting the legislatively authorized interpretation rendered by the Secretary of Labor, 20 C.F.R. § 10.503, the court in *Ostrowski* concluded that any damages recovered by the employee were subject to a government lien. *Id.* at 204. For the following reasons we reject the holding in *Ostrowski* and therefore, reverse the decision of the district court in the instant case, 550 F.Supp. 997.

The Federal Employment Compensation Act was enacted in 1916. The primary purpose of the law was to create a compromise: "the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate fixed benefits regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States,* — U.S. —, —, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983); *see also* H.R. Rep. No. 729, 81st Cong., 1st Sess. 14–15 (1949); S.Rep. No. 836, 1st Sess. 23 (1949). Recently, when it was amending the statute, Congress clarified the purpose behind the law, explaining that "the Federal Government should strive to attain the position of being a model employer." S.Rep. No. 1081, 93rd Cong., 1st Sess., *reprinted in* (1974) U.S.Code Cong. & Ad.News 5341. As such, it becomes quite evident that the statute was promulgated in an effort to assist the federal employee and to encourage able individuals to work for the government by providing favorable benefits.

The specific provision of the statute at issue in this action, 5 U.S.C. § 8132, was originally enacted for two basic purposes. First and foremost, Congress inserted § 8132 in an effort to prevent an employee from recovering twice for the same injury. Pub.L. No. 267, § 27, 39 Stat. 747–48 amended to 5 U.S.C. § 8132 (1967). The other purpose behind the reimbursement section, was to keep the fund solvent and minimize the cost of the program. *See Ostrowski v. Roman Catholic Archdiocese, supra* at 205. Both of these objectives are advanced by the requirement set forth in § 8132 that any employee who has been compensated by the government pursuant to FECA must subrogate his rights against a third party tort-feasor or reimburse the government for its past and future costs after receiving a damage award from the third party. 5 U.S.C. § 8132.

Although the intent behind the statutory scheme is obvious, the scope of the reimbursement provision is less clear. When drafting the law, Congress recognized that third party judgments would often include monetary awards for losses other than medical expenses and lost wages. As a result, the statute was structured in such a manner as to allow the government to calculate the amount needed for reimbursement in light of the total recovery. *United States v. Hayes, supra.* The reason for lumping together all potential damages was to avoid further confusion as to the portion of an award or settlement figure which would be allocated exclusively to medical expenses and loss of wages, and that percentage attributable to other items such as pain and suffering. *See Ostrowski v. Ro-*

man *Catholic Archdiocese, supra* at 206. In this instance both parties agree that the damages were solely compensation for appellant's pain and suffering. The government, however, seeks to reach into that award in order to obtain the desired reimbursement and in doing so, reads further into the statute than originally intended by Congress.

Unfortunately, § 8132 was passed prior to the enactment of no-fault statutes and therefore does not speak to this situation. "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Obviously, since the concept of no-fault insurance was not cognizable at the time the statute was drafted, Congress could not have anticipated this scenario. If, as in this case, the problem is one that Congress could not have considered, this court is obligated to analyze the purposes underlying the statute in order to determine its proper scope, *Rose v. Lundy,* 455 U.S. 509, 517, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

When it last amended FECA in 1973, Congress explicitly stated that it intended the law to insure "that injured or disabled employees of all covered departments or agencies ... be treated in a fair and equitable manner." S.Rep. No. 1081, 93rd Cong., 1st Sess., *reprinted in* (1974) U.S. Code Cong. & Ad.News 5341–43. The result now sought by the government converts a law which was originally intended to assist federal employees into one that is manifestly unfair to those same individuals. In light of the recent growth of no-fault laws throughout the country and in view of the inherent hardship that will evolve upon those federal employees who, per chance, are subject to no-fault statutes, it is incumbent on this court to reject the government's wide-ranging interpretation of § 8132.

Moreover, requiring reimbursement under these circumstances does little to further the legislative purpose behind § 8132. Obviously, appellant cannot recover twice for the same loss since he is barred from bringing a third party action for medical expenses and lost earnings. In fact, because of his recovery under FECA, he is precluded from recovering any benefits to which he may have been entitled under no-fault insurance. 5 U.S.C. § 8116(c); Pa. Stat.Ann. tit. 40, § 1009.106(a). Nor is the intent to foster administrative ease advanced by the application of § 8132 in this instance. Congress was troubled by the potential abuse that could occur if reimbursement was only deducted from the portion of the award allocated to medical expenses and wage loss. *See Ostrowski v. Roman Catholic Archdiocese, supra* at 205. The court in *Ostrowski* noted the problem, especially in settled cases, where parties would allocate a disproportionate percentage of the award to pain and suffering. In this manner they would circumvent their obligation to reimburse the government. This problem would not exist in situations involving no-fault statutes since the injured party is completely barred from suing for any medical expenses incurred and therefore the only compensatory damages to which he is entitled are those resulting from his pain and suffering. Pa.Stat.Ann. tit. 40, § 1009.301.

Another purpose of FECA, as pointed out earlier in this opinion, was Congress' hope that the law would help the federal government achieve its goal of becoming a "model employer." *See* S.Rep. No. 1081, 93rd Cong., 1st Sess., *reprinted in* (1974) U.S. Code Cong. & Ad.News 5341. In a realistic sense FECA is the government's answer to Workman's Compensation, *see* 5 U.S.C. § 8107 (we note with interest that Workman's Compensation was first enacted in Pennsylvania three years prior to the passage of the FECA), Pa.Stat.Ann. tit. 77, § 1 *et seq.* (1913). It should follow, therefore, that federal employees would be treated at least as well as their counterparts in private firms who are covered by Workman's Compensation. Under the proposed government interpretation, however, federal employees would be treated in a harsher manner than private workers who are covered by Pennsylvania Workman's Compensation law. In similar situations arising under Workman's Compensation, injured employees can insti-

tute a third party action for noneconomic detriment (pain and suffering) just as appellant did in the instant case. The difference, however, is that the Workman's Compensation statute does not require the successful party to reimburse the carrier for any expenditures made on his behalf. Pa. Stat.Ann. tit. 77, § 671.

The rationale used by Pennsylvania courts when interpreting § 671 of the Workman's Compensation statute, is as follows: "[since] the Pennsylvania No-fault Act has drastically altered the legal liabilities created in a motor accident," *Pierce v. Kinsey,* 18 D & C 531, 536 (Pa.Comm.Pl. 1981), the Workman's Compensation carriers cannot be subrogees for money paid in a tort action covering noneconomic loss. *See Brunelli v. Farelly Bros.,* 402 A.2d 1058, 1061 (Pa.Super.Ct.1979).[3] To permit subrogation by the intervenor insurance company for recovery of basic losses paid to plaintiffs under Workmen's Compensation payments would preclude recovery of the uneconomic losses suffered by plaintiffs." *Pierce v. Kinsey, supra* at 540. There is absolutely no reason in either the legislative history of FECA or in the interpretive regulations promulgated by the Secretary of Labor, as to why FECA cannot be viewed in an analo-

gous fashion. Such a reading of § 8132 would put federal employees on an equal footing with their counterparts in private industry and most importantly, it would allow for a fair result under the terms of the statute.

Finally, we are guided by this court's action when recently confronted with a similar statutory problem in *Heusle v. National Mutual Insurance Co.,* 628 F.2d 833 (3d Cir. 1980). The court in *Heusle* was faced with the issue of whether the no-fault carrier should be substituted for the actual tort feasor, so the government could recover against the insurer under § 2651 of the Medical Care Recovery Act [MCRA]. *See generally* 42 U.S.C. § 2651–2653 (1976). Wording used in the provision permitting reimbursement under MCRA[4] is analogous to language used in § 8132 of FECA. In analyzing MCRA, Judge Weis noted that the question of liability on the part of the third part tort feasor was ultimately determined by reference to the Pennsylvania no-fault statute. He then concluded "since there was 'no tort liability upon some person ... to pay damages' for medical expense, then there was no claim in tort to which the United States could be subrogated under MCRA.[5] *Heusle v. National Mu-*

---

**3.** This reasoning is analogous to that used by this court in its interpretation of the Medical Care Recovery Act (MCRA), 42 U.S.C. § 2651 et seq. (1976). *See Heusle v. National Mutual Insurance Co.,* 628 F.2d 833 (3rd Cir.1980), (*see* discussion of *Heusle, infra*). The court in *Pierce,* however, focused on the crux of the problem, stating that "the real reason that the victim cannot subrogate himself for a second helping of basic loss benefits is not based on tort or contract concepts but on *unjust enrichment.*" *Pierce v. Kinsey, supra* at 537, n. 2.

**4.** Section 2651(a) reads in pertinent part:

In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical or dental care and treatment ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have the right to recover from said third person ... 42 U.S.C. § 2651(a).

**5.** Section 8132 of FECA speaks in terms of "legal liability" rather than tort liability, however this decision does not rest on that language. Moreover, in the instant action, we turn to the regulations promulgated by the Sec-

retary of Labor, regulations which have a binding effect on this court. *See* 5 U.S.C. § 8149. The regulations, in relevant part, read as follows:

"if any injury for which benefits are payable under the Act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages *therefor, ..."*

20 C.F.R. § 1053 (emphasis added). One way of reading those regulations as they relate to the instant situation, is that appellant had no legal cause of action against a third party with respect to "the injury for which benefits are payable," namely medical expenses and lost earnings. *See* Pa.Stat.Ann. tit. 40 § 1009.-301(a)(5) (Purdon Supp.1980). In other words, the Pennsylvania law has impliedly created two separate causes of action; one for "basic economic loss" (as defined in § 1009.103) and another for "noneconomic detriment." (*See* § 1009.103.) Since appellant is barred from asserting the first cause of action, it follows naturally that the government must be precluded from recovering any expenditures made thereto. *See Heusle v. National Mutual Insurance Co., supra.* As such, the court would

*tual Insurance Co.,* supra at 837. In a companion case, *Hohman v. United States,* 628 F.2d 832, 833 (3d Cir.1980), this court went even further, holding that the government's right of subrogation applies only to medical expenses and because none of the money recovered represents compensation for medical expenses, "the United States has no claim to any part of that fund." Both *Heusle* and *Hohman* clearly indicate that the courts must recognize the impact of state no-fault laws and interpret federal compensation statutes accordingly. As such, the reimbursement provision of FECA must be construed in such a fashion as to allow a fair and equitable result for the intended beneficiary of the statute—the injured federal employee.

For the reasons stated in this opinion, this court finds that appellant is not required to reimburse the government for expenditures made pursuant to its obligation under 5 U.S.C. § 8101 *et seq.* (FECA). The decision rendered by the district court is hereby reversed.

have no power under FECA to compel reim-    bursement based on the facts of this case.