Miller SESSION and Rose Session, his wife, Plaintiffs,

v.

I.T.O. CORPORATION OF AMERIPORT, Defendant.

Civ. A. No. 84–2029.

United States District Court, D. New Jersey.

Sept. 20, 1985.

Sovel & Gruber by Charles Sovel, Haddonfield, N.J., for plaintiffs.

Clayton H. Thomas, Jr., Philadelphia, Pa., pro hac vice, and Saputelli & Young by Gregory Saputelli, Haddonfield, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

This maritime tort action, in which the plaintiffs seek only equitable relief, is presently before the Court on plaintiffs' motion for summary judgment. The primary plaintiff, Miller Session, is an injured longshoreman who is currently receiving workers' compensation benefits from his employer, the defendant herein, the I.T.O. Corporation of Ameriport (ITO). His wife alleges derivative damages and sues *per quod.* Essentially, Mr. Session, who shall hereinafter simply be referred to as plaintiff, seeks a declaration that ITO is not entitled to be reimbursed for the statutorily mandated payments it made to plaintiff pursuant to the Longshoremen and Harbor Workers' Compensation Act (the Act or LHWCA), 33 U.S.C. § 901 *et seq.,* because these benefits do not duplicate the compensation for noneconomic losses which he has been offered by the South Jersey Port Corporation (SJPC) in settlement of a third party negligence action. Plaintiff's claim arises, therefore, under the LHWCA and vests this Court with subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Because of the preliminary status of this case, its factual background has not been fully developed. Nevertheless, the facts are undisputed and, ultimately, are almost incidental to our disposition of the present motion. All that need be known about the accident in question, which took place on August 17, 1981, is that the plaintiff was seriously injured when a stack of lumber, which had been unloaded from a vessel, fell on him. The plaintiff claims that his injuries were proximately caused by unsafe pier conditions and the negligence of its operators, the SJPC. Mr. Session has already received extensive medical treatment and compensation benefits of more than $100,000.00. He is not entirely ambulatory and may well be permanently disabled.

Pursuant to its obligations under the LHWCA, ITO began paying workers' compensation benefits to the plaintiff shortly after Session's accident. In order to achieve a complete tort recovery, the plaintiff brought suit against the allegedly negligent third party, the SJPC. In its answer, the marine terminal operator raised the uncontroverted defense that it is a "public entity" of the State of New Jersey within the meaning of the New Jersey Tort Claims Act, N.J.S.A. § 59:1–1 *et seq.* As such, the SJPC is only liable to the plaintiff for those injuries which are *not* compensable from

any other source.[1] *See The Travelers Insurance Company v. Collella*, 169 N.J.Super. 412, 413, 404 A.2d 1250 (App.Div.1979) (workers' compensation insurer was not entitled to reimbursement from a public entity for benefits paid to injured employee). More specifically, the SJPC is not liable to the plaintiff for the costs of his medical, disability or rehabilitation expenses because these are recoverable under the LHWCA. *See* 33 U.S.C. §§ 906, 907 & 908.

On April 16, 1984, the Court convened a settlement conference between representatives of Mr. Session and the SJPC. At that time, Mr. Session agreed to accept a $40,-000 settlement offer from the SJPC on the condition that, pursuant to N.J.S.A. § 59:9-2(e), there would be no subrogation claim for reimbursement asserted by ITO and that plaintiff's right to collect his workers' compensation payments would not be otherwise affected by the SJPC settlement. Upon learning of this proposed agreement, ITO indicated that it would not be willing to abide by these terms. Instead, the defendant herein claims that it is entitled to credit *any* amount Mr. Session receives from SJPC against its workers' compensation liability.

 Although ITO has continued to pay compensation benefits to the plaintiff, its unwillingness to approve of plaintiff's proposed settlement with the SJPC and its stated intention to terminate the plaintiff's benefits if he consummates the settlement without its consent, *see* 33 U.S.C. § 933(g)(2), demonstrate the existence of a "definitive and concrete" dispute between parties with "adverse interests" thereby confirming this Court's ability to respond to plaintiff's request for declaratory relief. *See ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 822–23 (3d Cir.1981). Thus, we proceed to explain our resolution of the novel issue presented by this case: Does a stevedore's lien, acquired by payment of statutory workers' compensation benefits, apply to *any* recovery (minus the costs of litigation) an injured longshoreman may obtain from a culpable third party even if the longshoreman clearly will not realize any double compensation by retaining both the statutory benefits and the third party damages? We hold that it does.

## DISCUSSION

Like other workers' compensation statutes, the LHWCA employs a fundamental *quid pro quo* in that it mandates a reciprocal relinquishment of important legal rights. "Employees are assured hospital and medical care and subsistence during convalescence. Employers are assured that regardless of fault their liability to an injured workman is limited under the act." S.Rep. No. 428, 86th Cong., 1st Sess. 1, *reprinted in* 1959 U.S.Code Cong. & Ad. News 2134 [hereinafter cited as S.Rep. No. 86-428]. *See also Morauer & Hartzell, Inc. v. Woodworth*, 439 F.2d 550, 552–53 (D.C.Cir.1970). What seems somewhat atypical about the Act, or more particularly about its evolution, is the frequency with which Congress has responded to Supreme Court interpretations of the Act by enacting subsequent amendments. Most of this interaction between the judiciary and legislature has taken place in regard to actions, like the one at bar, in which longshoremen

---

1. In relevant part, the New Jersey Tort Claims Act provides:

 e. If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the

 rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee. N.J.S.A. § 59:9–2(e) (West 1982).

 It is clear that the SJPC is a "public entity" within the definition of the state act. *See* N.J. S.A. § 59:1–3. *See also S.E.W. Friel Company v. N.J. Turnpike Authority*, 73 N.J. 107, 115–16, 373 A.2d 364 (1977). At oral argument, defendant's counsel agreed that this material fact is undisputed.

(or employers subrogated to their rights) sue allegedly negligent third parties. Usually, these third parties are shipowners. In this case, no vessel contributed to plaintiff's injuries, however.

"[I]n the typical tripartite situation, the longshoreman is not only guaranteed the statutory compensation from his employer; he may also recover tort damages if he can prove negligence by the vessel." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768 (1980). Prior to the 1972 LHWCA amendments and by virtue of three Supreme Court decisions,[2] a longshoreman could obtain tort recovery from a vessel merely by proving that his injury was caused by an "unseaworthy" condition. The vessel could then recover from the longshoreman's employer by proving negligence.

The net result, in many cases, was to make the stevedore absolutely liable for statutory compensation in all cases and to deny him protection from additional liability in the cases in which his negligence could be established. The 1972 Amendments protect the stevedore from a claim by the vessel and limit the longshoreman's recovery to statutory compensation unless he can prove negligence on the part of the vessel.

*Id.* at 531 n. 7, 103 S.Ct. at 2547 n. 7.

Congress has also expressed its support of Supreme Court opinions which have construed the LHWCA. In *Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983), for example, the Court held that a longshoreman's acceptance of voluntary compensation payments did not constitute an acceptance of compensation "under an award in a compensation order." *Id.* at 532–39, 103 S.Ct. at 1994. Thus, an employee's voluntary acceptance of benefits did not trigger an assignment of his third party cause of action, which has only recently been made

revocable, to his employer. *See* 33 U.S.C. § 933(b). In its 1984 LHWCA amendments, most of which became effective immediately, Congress adopted the *Pallas Shipping* holding. *See* H.Conf.R. No. 1027, 98th Cong., 2nd Sess. 36, *reprinted in* 1984 U.S.Code Cong. & Ad.News 2734, 2786 [hereinafter cited as H.C.R. No. 98–1027].

The 1984 amendment that we find to be dispositive of this case was enacted in reaction to *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). There, the Court held that the judicially established stevedore's lien, which is at issue in this case, is not to be reduced by an amount representing an employer's proportionate share of the legal expenses a longshoreman encountered in obtaining a recovery from a third party. *Id.* at 85–88, 100 S.Ct. at 931–33. Essentially, the Court applied the allocation scheme which Congress had specified for third party recoveries obtained by subrogated employers, *see* 33 U.S.C. § 933(e), to a longshoreman's own action. A "review of the Act and its legislative history persuade[d] [the Court] that Congress intended the stevedore to recover the full amount of its lien, regardless of who brings the action." *Bloomer*, 445 U.S. at 87 n. 14, 100 S.Ct. at 932 n. 14. In its 1984 Amendments, Congress rejected this conclusion.

The new § 33(f) of the LHWCA, which became effective on September 28, 1984 to all pending cases,[3] provides that, in the event of an employee's third party recovery,

the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the

---

**2.** *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549–50, 80 S.Ct. 926, 932–33, 4 L.Ed.2d 941 (1960); *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed.

133 (1956); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

**3.** *See* LHWCA Amendments of 1984, Pub.L. No. 98–426, § 28, 98 Stat. 1639, 1655 (1984).

expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorneys' fees). 33 U.S.C. § 933(f) (West Supp.1985). Thus, while reversing the specific holding in *Bloomer* and allowing employees to retain their entire costs of litigation, Congress has validated the attempt of the Court in *Bloomer* to negate the "suggest[ion] that [a] stevedore's lien has priority over the longshoreman's *expenses.*" 445 U.S. at 86 n. 13, 100 S.Ct. at 932 n. 13 (emphasis supplied). Specifically, Congress has directed that an employee must reimburse an employer for its workmen compensation payments with the *net amount* of his third party recovery and has defined this net amount to be "the *actual* amount recovered less the expenses [of litigation]." 33 U.S.C. § 933(f) (emphasis supplied). Thus, unless we find plaintiff's recovery from the SJPC for pain and suffering to be a cost of litigation, we cannot hold that it is excluded from the amount to be reimbursed to the defendant ITO. Of course, we must reject this absurd definition of pain and suffering. *See, e.g.,* Dobbs, *Remedies* 544–45 (1st ed. 1973).

Our holding does not comport with the rationale which led to the judicial establishment of the stevedore's lien. In the seminal case of *The Etna,* 138 F.2d 37 (3d Cir.1943), the court held that the lien was necessary in order to give effect to "the right of subrogation which, under equitable principles, attaches where one, not acting officiously, pays money on account of a legal obligation resting upon him for the imposition whereof another is held pecuniarily responsible." *Id.* at 39. In support of its holding, the court cited § 162 of the Restatement of Restitution. This provision states that equitable subrogation is employed in order to disallow *unjust* enrichment. Thus, *The Etna* has been credited with first articulating the proposition that a longshoreman may not retain, by virtue of a third party suit, a double recovery of full statutory compensation plus full damages in an action at law. *See, e.g., Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 270 n. 25, 99 S.Ct.

2753, 2761 n. 25, 61 L.Ed.2d 521 (1979); *Dodge v. Mitsui Shintaku Ginko K.K. Tokyo,* 528 F.2d 669, 674 (9th Cir.1975). *See generally* Norris, *The Law of Maritime Personal Injuries* § 95 at 171 n. 17 (3d ed. 1975). Congress has, in the past, expressed only agreement with this proposition. *See, e.g.,* S.Rep. No. 86–428 at 2; Hearings on S. 2318 et al. before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92nd Cong., 2d Sess., 160, 371 & 720.

In the case at bar, there would be no double recovery if the plaintiff were permitted to retain both the $40,000 offered by the SJPC, an amount specifically intended to compensate him for noneconomic losses (principally pain and suffering) for which compensation is not available under the LHWCA, and his statutory compensation for medical and subsistence expenses. Moreover, it is "the Judiciary [which] has traditionally taken the lead in formulating flexible and fair remedies in the law maritime...." *United States v. Reliable Transfer Co.,* 421 U.S. 397, 409, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975). Nevertheless, we feel bound to apply the unambiguous language of § 33(f) of the LHWCA and declare that the net proceeds of any settlement between the SJPC and the plaintiff would belong to the defendant ITO.

We are guided, in this holding, by the case of *United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984) *reversing* 710 F.2d 982 (3d Cir.1983). There, the Court held that a federal agent, who was injured in an automobile accident in Pennsylvania, had to reimburse his employer (the federal government) for payment made pursuant to the Federal Employees' Compensation Act (FECA) from his third party recovery even though the FECA payments had only compensated him for economic losses and his third party recovery was limited, by the Pennsylvania No-Fault Vehicle Insurance Act, to noneconomic losses like pain and suffering. Thus, in a setting which is almost perfectly anal-

ogous to the case before us,[4] the Court ruled that the unambiguous language of § 8132 of the FECA was presumptively dispositive and that "[n]othing in FECA's legislative history [demonstrated] that § 8132 means something less than what it says." *Id.* at ——, 104 S.Ct. at 2290. The same is true of § 33(f) of the LHWCA.

Section 33(f) of the LHWCA contains no ambiguity and there is also no question that Congress was aware of the possibility that a longshoreman might have to reimburse an employer for its compensation payments with damages recovered in a third party action for injuries that are not compensable under the LHWCA. To illustrate the latter point, we quote the following passage from the House Committee's Report on the 1984 LHWCA amendments:

S. 38, as passed by the Senate, made changes to Section 33(f) of the current law, with respect to the disposition of the proceeds of a third party law suit which was brought by the employee or person entitled to compensation under this Act. The Senate bill provided that the entire amount recovered would be available to the employer's lien for compensation paid, or compensation to be paid under this Act. This provision concerned the Committee because of the uncertainty as to responsibility for payment of the attorneys' fees and litigation expenses associated with such suit, especially where the employer's lien equalled or exceeded the amount of the award or settlement achieved in the law suit. Accordingly, the House version clarifies this situation by specifically providing that the claimant/plaintiff's litigation expenses shall be paid from the recovery in the law suit before the employer's compensation lien would apply. The Committee also added a provision that after such litigation expenses are paid, a sum equal to 15% of the remaining recovery shall be provided to the claimant/plaintiff. Only the amount of such recovery which remains after payment of the claimant/plaintiff's litigation expenses and the 15% of net ater [sic] payment of such expenses which is earmarked exclusively for the claimant/plaintiff would be available to satisfy the employer's compensation lien. The Committee very strongly believes that if the claimant bears the burden of bringing and sustaining a law suit, and succeeds in that suit, the claimant should "walk away from the courthouse" with some portion of the recovery in that suit. In the Committee's view, the law suit against the third party can be, and often is for damages which are not compensable under the workers' compensation system, such as pain and suffering, and loss of consortium. It is for this reason that the Committee believes some provision must be made to insure that the person bringing the law suit retain some of the proceeds of the suit, for damages for which he otherwise would not be compensated.

H.C.R. No. 98–1027 at 8. Notwithstanding the Committee's quoted concerns, Congress decided that it was only necessary to ensure that a longshoreman retain enough of

---

4. There are some factual differences between *Lorenzetti* and the case at bar but none convinces us that a contrary holding would be proper. In both cases, the purpose of the statutory reimbursement provision was "to prevent double recoveries [and] minimize the cost of" workers' compensation programs to employers. 467 U.S. at ——, 104 S.Ct. at 2291. In *Lorenzetti*, however, it was the employer's sovereign immunity which may have led the Court to construe the FECA (effectively a waiver of the same) narrowly. In the case at bar, it is the sovereign immunity of the third party, the SJPC, which will ultimately deprive the plaintiff of the full panoply of tort recoveries. We do not find this difference to be significant. In both cases, the holdings are products of unambiguous statutory provisions which, absent a clear expression of contrary legislative intent, are deemed conclusive. *See, e.g., Consumer Product Safety Comm. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

We note, finally, that the case at bar does not present a conflict of state and federal law. The sovereignty of the *states* is as much a part of the federal constitutional plan as is the sovereignty of the federal government. *See, e.g.,* Tribe, *American Constitutional Law,* § 3–35 (1978). Thus, the LHWCA does not *conflict* with New Jersey's limited liability in a manner that would allow us to invoke the Supremacy Clause to ensure their peaceful coexistence.

his third party recovery to guarantee that he did not lose the *costs* (including attorneys' fees) of his third party litigation. *See* 33 U.S.C. § 33(f). Congress apparently rejected the Committee's recommendation of a 15% residual accruing to the long-shoreman's benefit and we must, of course, give effect to this determination.

For all of the foregoing reasons, we hold that the defendant, ITO, is entitled to be reimbursed for the workers' compensation benefits which it has paid to the plaintiff from any recovery the plaintiff obtains from SJPC excepting the expenses reasonably incurred by the plaintiff in the third party litigation. Plaintiff's *expenses* do not include *compensation* for noneconomic losses such as pain and suffering.

In addition to declaratory relief, the plaintiff sought an order enjoining ITO from terminating its payment of benefits if Mr. Session settles his suit with SJPC without ITO's consent. *See* 33 U.S.C. § 933(g). Given our previous determinations and ITO's obvious interest in the proposed settlement, we will, of course, deny plaintiff's request for an injunction. The Court shall issue an appropriate order.