[No. 14429. *En Banc.* April 3, 1918.]

# Emma O'Brien, *Respondent,* v. Industrial Insurance Department, *Appellant.*[1]

Appeal—Review—Findings—Absence of Evidence. Where the evidence is not brought up, the findings are conclusive, and an appeal presents only the question whether they support the judgment.

Master and Servant—Workmen's Compensation Act—Employment in "Warehouse"—Findings—Construction. From findings that defendant was doing a general public warehouse, dock and wharf business, it will be inferred that the dock, wharf and warehouse was a single plant or structure, within the industrial insurance act relating to extra hazardous employments in docks and wharves, and when coupled with a finding that the work in the warehouse was extra hazardous, it will be assumed that the warehouse was the superstructure of a "dock" or "wharf," and that the work was not exempted as work in a "private warehouse;" especially since "warehouses" may or may not be within the act, depending on the nature of the work (Fullerton and Main, JJ., dissenting).

Same—Fund. In such case, it will be assumed that a fund is or will be collected to pay the claim.

Same — Compensation — Appeal — Attorney's Fees — Statute. Rem. Code, § 6604-20, allowing the recovery of attorney's fees on appeal from orders of the industrial insurance commission to the superior court, does not authorize a conditional attorney's fee on appeal to the supreme court, and none can be allowed, in the absence of statute.

Appeal from a judgment of the superior court for King county, French, J., entered March 12, 1917, upon findings in favor of the plaintiff, allowing a claim for compensation, upon appeal from a decision of the industrial insurance commission, tried to the court. Affirmed.

*The Attorney General* and *Howard Waterman, Assistant,* for appellant.

*Geo. H. Rummens (Jay C. Allen,* and *E. L. Wienir,* of counsel), for respondent.

[1]Reported in 171 Pac. 1018.

CHADWICK, J.—Robert C. O'Brien was accidently killed while in the employ of the Virginia Street Dock & Warehouse Company. His widow, the respondent, presented to the industrial insurance commission a claim for compensation under the workmen's compensation act. (Laws 1911, p. 345; Rem. Code, § 6604-1 *et seq.*) The claim was rejected by the commission, whereupon the respondent appealed from the order of rejection to the superior court of King county. That court entered a judgment allowing the claim, and the commission appeals to this court, assigning as error: (1) That the claimant is not entitled to compensation because the decedent was killed while working in a warehouse, which character of work is not extra hazardous within the meaning of the workmen's compensation act; and (2) that the allowance of the conditional attorney's fee is unwarranted by the statute.

The case is before us upon the findings of fact made by the trial court and the conclusions of law drawn therefrom, the evidence on which the findings are based not being in the record. The findings of fact follow:

"(1)   That, on the 4th day of June, 1916, the Virginia Street Dock & Warehouse Company was a corporation engaged in conducting and carrying on a general public warehouse, dock and wharf operation business in the city of Seattle, state of Washington, and in storing and handling therein goods, wares and merchandise of other people and the general public for hire, in which said dock, warehouse and wharf operation it used and operated power driven machinery in conducting and carrying on its said business.

"(2)   That, on the 3d day of· June, 1916, the said corporation directed one David W. West as its agent to procure for said corporation a watchman to work in and guard its said warehouse during the following day, and that, pursuant to such direction, the said David W. West sought out Robert C. O'Brien and requested him to call at the office of said corporation at

its said plant on the morning of the following day, to wit: on Sunday, the 4th day of June, 1916, for the purpose of entering the employ of said corporation in said capacity, and that about seven o'clock on said Sunday morning, the said Robert C. O'Brien reported at the said office of said corporation, and was then and there at said time, by the foreman of said corporation, who was in charge of the said plant of said corporation, placed at work as a watchman in charge of the warehouse of said corporation's aforesaid plant, and the said foreman, at stated intervals with reference to his said work, and thereupon the said O'Brien went into the said warehouse and commenced to perform services under said employment.

"(3)    That the said West was in no wise engaged in the business of operating said warehouse, and had no control or direction over the method or manner in which the said O'Brien should perform his services, but said services were to be performed, and were performed, by the said O'Brien under the order and direction of the officers and agents of the said corporation.

"(4)    That, at the trial of this cause, it was stipulated between the attorneys for the respective parties in open court that the services and work in which the said O'Brien was engaged were of extra hazardous nature, and were such as to bring him within the terms of the workmen's compensation act, in event he was in fact employed by and working for the said corporation, but it was not conceded by the attorney for the industrial insurance department that the said O'Brien was employed by and working for said corporation.

"(5)    That, shortly after said O'Brien went to work in said warehouse and while he was engaged in the line of the work for which he was employed, he attempted to operate a power driven elevator, and in some manner not disclosed by the evidence, started the elevator in operation and was caught between said elevator and the floor of the building and crushed to death, he having been found dead about four hours after he entered upon the discharge of his duties under such employment.

"(6)    That the said Robert C. O'Brien left surviving him, his widow, Emma A. O'Brien, and one son, to wit: William C. O'Brien, born September 7, 1901.

"(7)    That, within the time limited by law, the said corporation reported said accident and death to the industrial insurance department of the state of Washington. That, within the time limited by law, the said Emma A. O'Brien, widow of the said Robert C. O'Brien, deceased, presented and filed her claim in writing under the workmen's compensation act with the workmen's compensation commission of the state of Washington, and thereafter her claim came on regularly to be heard before said industrial insurance department, and upon said hearing the said industrial insurance department made and entered its order rejecting her said claim in its entirety, and denying her any and all relief.

"(8)    The court finds that each and every statement in the said claim so presented to the said industrial insurance department of the state of Washington by the said Emma A. O'Brien was and is true.

"(9)    That, after the rejection of her said claim by said industrial insurance department, and within the time limited by law thereafter, the said Emma A. O'Brien, being a resident of King county, state of Washington, duly and regularly appealed to the superior court of the state of Washington in and for King county, from the order of said industrial insurance department rejecting her said claim.

"(10)    The court further finds that, in the prosecution of her said appeal to this court, the said Emma A. O'Brien was compelled to, and did, employ said attorneys herein named, to prepare her said appeal and try this cause on said appeal, and that the judgment herein is one which will reverse the decision of the industrial insurance department and will affect the accident funds, and that a reasonable attorney fee to be allowed and paid to the said attorneys out of the administration fund for the trial of said cause in this superior court is one hundred fifty dollars; and the court further finds that, in event this cause shall be appealed to the su-

preme court of the state of Washington by the said industrial insurance department, then in, such case, a reasonable attorney fee for the services of said attorneys on such appeal is one hundred dollars, which, in event of this cause being affirmed on such appeal, shall be payable to said attorneys out of the administration fund.''

Shortly after the judgment of the superior court was rendered, and within the time for appeal, this court handed down its opinion in the case of *State v. Powles & Co.*, 94 Wash. 416, 162 Pac. 569. We held that a resolution of the commission bringing warehouses within the terms of the industrial insurance act was not vital to bring a private warehouse connected with a mercantile business under the law, there being no showing that employment in such a warehouse was either hazardous or extra hazardous. Upon the strength of that opinion, the *Attorney General* brings up this case, contending that the findings of the court are that the claimant was injured in a warehouse, and for that reason, no recovery can be had.

It is recited as preliminary to the findings of fact and conclusions of law, ''a jury being waived, evidence was offered by the respective parties, and the case was argued by attorneys for the respective parties and submitted to the court, and the court being fully advised in the premises makes the following findings of fact.'' The decree of the court recites that ''evidence was offered by the respective parties, &c, &c.''

It is settled by a line of authorities so numerous that no citation of them is necessary that a case brought here on the findings of the court below without a statement of facts raises but one question, that is, whether the findings sustain the judgment. But it is argued that the findings are not sufficient, or sufficiently clear, to sustain the judgment of the court.

The court found as a premise for all other findings that:

"The Virginia Street Dock & Warehouse Co. is a corporation engaged in conducting and carrying on a general public warehouse, dock and wharf operation business in the city of Seattle, state of Washington, and in storing and handling therein goods, wares and merchandise of other people and of the general public for hire, in which said warehouse and dock operation it used power driven machinery in conducting and carrying on its business."

In finding 2, it is made to appear that the work that the deceased was called upon to do was that of a watchman in the warehouse of the corporation; that he was put to work "by the foreman," who had "charge of the warehouse of said corporation's aforesaid plant." It was stipulated by the parties that the work was extra hazardous, and is so found by the court.

All intendments and inferences are to be taken in favor of the findings of the court. We must presume that there was evidence to sustain the findings. It is admitted that docks and wharves are within the terms of the act. The court has found that the Virginia Street Dock & Warehouse Company was doing a general public warehouse, dock and wharf operation in the city of Seattle. From these findings it may be readily inferred, and, as we conceive the law, it is our duty to infer, that the dock, wharf and warehouse was a single structure or plant, or, if they be considered as separate entities, that they were so operated one with the other as to make one business or concern.

To hold that a wharf or dock which is covered by a building in which commodities are stored is, because of that fact, a warehouse and ceased to be a dock or wharf would be to take out of the law by judicial decree the

greater number of docks and warehouses in this state. It would be to emasculate the act of its provisions declaring employment on docks and warehouses to be an extra hazardous occupation.

This holding in no way trenches upon the *Powles* case. We did not there declare that every warehouse was to be exempted from the operations of the act, but rather that the commission had no authority under the law to arbitrarily declare employment in a private warehouse to be extra hazardous when the order of the commission could not be sustained either by reference to the law or by proof of the fact. Here it is fairly within the findings that the warehouse was the superstructure of a dock or wharf and the work was extra hazardous.

It may be said that the findings of the court are too meager to determine whether the warehouse in which the accident occurred was of such a nature as to make employment therein extra hazardous. But this position is not tenable. To reach it we would have to disassociate the word "warehouse" from the finding as to the character of the business which was carried on by the "Dock & Warehouse Co." and rest our decision upon the word "warehouse" alone. We are not privileged to do this under the authorities. We must take all of the findings with their reasonable and legitimate inferences; and when so taken and coupled with the stipulation that the employment was in fact extra hazardous, we are compelled to find either that the warehouse was a part of the dock and wharf structure, or, if only a warehouse, that the employment was extra hazardous. Under either theory of the law the appellant is entitled to recover.

Counsel urges, in the event that we sustain the finding of the trial court, no fund is available for the payment of the claim. But this contention is rested upon

the theory that plaintiff was injured in a warehouse, that warehouses are exempted from the operation of the act, and, for that reason, no fund can be built up for the payment of such claims. But in the light of our holding that warehouses may or may not be within the terms of the act, depending upon their character and use, and that a warehouse built over a dock or wharf may be a part of the dock or wharf, either on account of the union of its structural parts or by reason of its use, we think there is no merit in the contention of counsel. Docks and wharves are within the act by its terms, and warehouses may be, so that we will presume that a fund is, or will be, collected out of which the claim can be satisfied.

On the second question, we are of the opinion that the court erred in allowing the conditional attorney's fee. The right of a litigant to recover his attorney's fees from the opposing party is a statutory right. It did not exist at the common law. The statute cited as bearing upon the question, Rem. Code, § 6604-20, relates to appeals from the orders of the industrial insurance commission to the superior court. No statute authorizes the allowance of attorney's fees on an appeal from the superior court to the supreme court. There being no statute granting the right, it is beyond the power of either the superior court or this court to make an allowance of attorney's fees for such an appeal. See *Boyd v. Pratt,* 72 Wash. 306, 130 Pac. 371.

With this modification the judgment is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, PARKER, and WEBSTER, JJ., concur.

FULLERTON, J. (dissenting in part) — On the first question discussed by the majority, I am unable to concur in the conclusion reached.

Whether the warehouse in which the accident occurred was of such a nature as to render employment therein extra hazardous, the findings of fact, it seems to me, are too meager to determine. While docks and wharves are among the places enumerated in the workmen's compensation act as extra hazardous for workmen laboring therein, warehouses are not. If a warehouse is within the act, therefore, it is because of some special circumstance making work therein extra hazardous, a fact to be determined from the conditions surrounding the particular case.

Turning to the finding, and disregarding for the moment the stipulation mentioned in the findings, nothing is found to indicate that this warehouse differed in its operation from the ordinary warehouse such as was under contemplation in the case of *State v. Powles & Co.*, cited by the majority. True, the court found that the corporation owning the warehouse was "engaged in conducting and carrying on a general public warehouse, dock and wharfage operation business . . . and in storing and handling therein goods, wares and merchandise of other people and the general public for hire," but this is not a finding that the warehouse was so closely connected with the dock and wharf as to be an inseparable part of both or either of them. The finding could be true, and the warehouse be not connected with, or form a part of, either of such places. The remaining findings lend color to the fact that it was not so connected. It is found that the person killed was employed to work in the warehouse, not the warehouse, dock and wharf, and that he was killed in the warehouse, not on either the dock or wharf, implying a separate structure rather than one connecting with some other. As a matter of fact, it was not so connected. In the first argument of the cause it was stated without contradiction that the warehouse was across

the street from the dock and wharf, connected with them only by an overhead covered tramway.

It was found, it is true, that power-driven machinery was used in the business, and that the person killed was killed while in the act of using a power-driven elevator; but, as we pointed out in *Remsnider v. Union Sav. & Trust Co.*, 89 Wash. 87, 154 Pac. 135, Ann. Cas. 1917D 40, the workmen's compensation act does not say, nor does it imply, that every place in which power-driven machinery is employed impresses an extra hazardous character on work performed therein. It but employs the circumstance of the presence of power-driven machinery with a number of other things, some one or more of which must be connected with or concur with the power-driven machinery to impress the place with an extra hazardous character. The case is authority also for the proposition that a power-driven elevator does not impress a place with an extra hazardous character.

I think, therefore, that the majority are in error in reaching the conclusion from the facts found that the place in which the person killed was employed to work was impressed with an extra hazardous character.

The trial court found the place of work extra hazardous because of the stipulation of the parties. But I cannot think the stipulation controlling under the peculiar circumstances of the case. That stipulation and its subsequent inadvisability arose from the following circumstances: Prior to the accident which resulted in the death, the commission, by resolution, sought to bring within the operation of the workmen's compensation act "all firms or individuals operating storage warehouses, or warehouses in connection with mercantile establishments, whether operated independently or in connection with other businesses," and required the owners and operators thereof to make con-

tribution to the accident fund at the basic rate of two per centum on the amount of their respective pay rolls. At the time of the happening of the accident, and at the time the cause was tried in the court below, the commission was giving full force and effect to the resolution, and naturally its counsel did not suggest the question whether the work in which the person killed was engaged fell within the operation of the compensation act, but commendably stipulated every question on which it did not desire to take issue. The claim for compensation was denied by the commission on another ground, namely, that the person killed was not an employee of the warehouse company, and this was the only question contested at the trial. However, shortly after the judgment was entered, this court handed down its opinion in the case of *State v. Powles & Co.*, in which it was held that the resolution of the commission, in so far as it was sought to bring within the operation of the compensation act private warehouses operated in connection with a mercantile business the work in which was not in fact extra hazardous, was beyond the powers of the commission. The effect of the decision was to introduce a new element into the case. If the warehouse in which the death occurred fell within the rule of the case cited, the accident was one for which compensation could not be lawfully made out of the funds under the control of the commission, and it found itself burdened with a judgment with the possibility of no funds, or means of creating a fund, out of which the obligation could be met.

It is doubtless the general rule that stipulations concerning facts, and perhaps stipulations concerning mixed questions of law and fact, are binding where private interests are involved, and cannot afterwards be repudiated or questioned when the effect is to set aside or reverse a judgment entered on the faith of the stip-

ulation. But, however general the rule may be, I do not think it ought to be controlling in litigation of this character. The industrial insurance commission is in no sense a private litigant. Whatever may be the result of litigation in which it is a party, it as an entity neither gains nor loses. It is but the representative of a public interest, the trustee of an involuntary trust, if I may so define its functions. Through powers invested in it by legislative authority it collects from persons, firms, and corporations engaged in certain businesses called extra hazardous, funds which it disburses to workmen employed in such businesses when they are injured in the course of their employment. Losses caused by the mistakes of the administrators fall upon the contributors thereto, since the amount paid in by them is governed by the amount disbursed by the commission. Since these payments are involuntary, and since the commission is a state institution, not the private employee of the contributors, losses caused by its mistakes should not be left without a remedy where remedy is still within the power of the courts, even though to give relief may violate some settled policy of the law applicable to individual litigants. That the stipulation here was the result of a mistake, and a pardonable one, on the part of counsel representing the commission, needs only to be stated to receive sanction. The counsel was but following the settled policy of the commission as indicated in the resolution mentioned.

Nor do I think it follows from my conclusions that the respondent must be summarily dismissed. If the place in which her husband was employed to work was extra hazardous, she is entitled to recover, even though a warehouse is not among the extra hazardous places especially enumerated in the statute. The act (Rem. Code, § 6604-2) provides:

."If there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, . . ."

If, therefore, it can be shown that this warehouse presented an extra hazardous condition for labor engaged therein, either because of its situation, its connection with another establishment, or for other causes, the respondent is entitled to compensation for the death of her husband therein. The death need not have been caused by the hazards of the place. It is sufficient if it occurs in the place or away therefrom, the person employed being, at the time of his death, in the course of his employment.

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in § 6604-4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer." Rem. Code, § 6604-3.

See, also, *Stertz v. Industrial Insurance Commission,* 91 Wash. 588, 158 Pac. 256.

If it be said that the clause from the compensation act quoted is not self-executing, and that it requires some action on the part of the commission, or an application on the part of the owner or operator, to bring within the operation of the act businesses not within the specific enumeration of extra hazardous businesses but which are actually so, we have here such action in the resolution of the commission. The action of the commission as evidenced by the resolution was not in itself declared void by the case of *State v. Powles & Co., supra.* It was but held that the commission could not, by resolution, impress an extra hazardous character on work performed in a particular place, the work in which was not, in fact, extra hazardous. The

resolution can, therefore, operate in all places therein described in which the work is extra hazardous, a fact to be determined from the nature of the work carried on in the particular place.

The respondent then having only a possible, not a clear, right to compensation, the cause should, in justice to the parties concerned, be sent back for a retrial, not summarily affirmed.

On the second question, I agree with the conclusion of the majority.

MAIN, J., concurs with FULLERTON, J.