[Nos. 59298-5; 59307-8.    En Banc.    March 3, 1994.]

RICHARD FLANIGAN, *Respondent*, v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Petitioner*.

MIRIAM DOWNEY, *Petitioner*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent*.

*Christine O. Gregoire, Attorney General,* and *Beverly Norwood Goetz, Assistant,* for the State.

*Richard J. Hilfer* and *Castle, Schnautz & Hilfer,* for petitioner Downey.

*Paine, Hamblen, Coffin, Brooke & Miller,* by *Mary M. Palmer,* for respondent Flanigan.

JOHNSON, J. — In these two consolidated cases we review conflicting decisions from different divisions of the Court of Appeals. In each case, the spouse of a worker killed on the job obtained workers' compensation benefits and also recovered damages for loss of consortium in a suit against a third party. The Department of Labor and Industries (Department) claimed a portion of each third party recovery as reimbursement for the workers' compensation benefits it had paid.

We hold the Department's right to reimbursement does not extend to a spouse's third party recovery for loss of consortium. We affirm the Court of Appeals, Division Three, in *Flanigan v. Department of Labor & Indus.*, 65 Wn. App. 119, 827 P.2d 1082 (1992), and reverse the Court of Appeals, Division One, in *Downey v. Department of Labor & Indus.*, 65 Wn. App. 200, 827 P.2d 1101 (1992).

## I

### FACTS

### *Flanigan v. Department of Labor & Indus.*

Janice Flanigan's husband died from injuries suffered while working on a job which was covered by Washington's workers' compensation act, the Industrial Insurance Act,

RCW Title 51. The Department of Labor and Industries granted her application for surviving spouse's benefits. Flanigan then sued a third party tortfeasor, both individually and as representative for her husband's estate. She recovered $189,000 for her own loss of consortium.[1] She also recovered for her husband's estate an award of $94,468.50 in economic damages.

The Department claimed reimbursement from the proceeds of the entire recovery, including Janice Flanigan's separate award for loss of consortium. According to the parties' stipulation, the Department asserted a lien against the entire third party recovery in the amount of $82,522.89; the Department demanded reimbursement in the amount of $39,735.40; and no benefits or compensation were to be paid until the excess recovery of $70,717.37 had been offset.[2] The Board of Industrial Insurance Appeals (Board) affirmed the Department's order.

The Spokane County Superior Court reversed the Board on summary judgment. The Court of Appeals, Division Three, affirmed the Superior Court. *Flanigan v. Department of Labor & Indus., supra.* The Department obtained discretionary review in this court.

### Downey v. Department of Labor & Indus.

Charles Downey contracted employment-related asbestosis and obtained workers' compensation benefits. He and his wife, Miriam Downey, sued third parties and recovered a total award of $184,875 as compensation both for his asbestosis and her loss of consortium. The Department's policy, which is not being challenged here, is to allocate 80 percent of asbestosis awards to the worker and 20 percent

---

[1] We use the general term "loss of consortium" in this opinion to include its typical components of " 'loss of society, affection, assistance and conjugal fellowship, and . . . loss or impairment of sexual relations' in the marital relationship." *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 773, 733 P.2d 530 (1987) (quoting *Ueland v. Pengo Hydra-Pull Corp.*, 103 Wn.2d 131, 132 n.1, 691 P.2d 190 (1984)).

[2] The calculations underlying these figures can be found in *Flanigan*, 65 Wn. App. at 120 n.1.

to the spouse for loss of consortium. The Department asserted against Charles Downey's 80 percent share the Department's right to be reimbursed for the benefits it had paid him. The Department did not initially assert its reimbursement right against Miriam Downey's 20 percent share. Nevertheless, after Charles Downey died and Miriam Downey began receiving a pension as a surviving spouse, the Department determined it would use her 20 percent share as a source of reimbursement of her pension payments. According to the parties' stipulation, the amount of this reimbursement is $11,369.57.

The Board, after an initial proposed order in favor of Miriam Downey, reversed itself and ruled the Department's right of reimbursement applied to the loss of consortium recovery. The Board's order was upheld on summary judgment in the King County Superior Court. The Court of Appeals, Division One, affirmed. *Downey v. Department of Labor & Indus., supra.* Miriam Downey obtained discretionary review in this court.

We have consolidated the two cases for review in this court. The issue in common is whether the Department's right of reimbursement extends to a surviving spouse's third party recovery for loss of consortium.

## II

### ANALYSIS

The Industrial Insurance Act (Act) is based on a compromise between workers and employers, under which workers become entitled to speedy and sure relief, while employers are immunized from common law responsibility. RCW 51.04.010; *see McCarthy v. Department of Social & Health Servs.,* 110 Wn.2d 812, 816, 759 P.2d 351 (1988); *Reese v. Sears, Roebuck & Co.,* 107 Wn.2d 563, 571, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle,* 111 Wn.2d 903, 909-10, 766 P.2d 1099 (1989). The compromise abolishes most civil actions arising from on-the-job injuries and replaces them with an exclusive remedy of workers' compensation benefits. RCW 51.04.010.

This compromise provides certain advantages to employees and their beneficiaries. An employee or beneficiary may obtain timely compensation and need no longer show the standard elements of a common law cause of action, including fault on the part of the employer. *See* RCW 51.04.010; *Reese*, 107 Wn.2d at 571. Instead, an employee or beneficiary generally qualifies for workers' compensation benefits merely by suffering an injury or disease during the course of an employment covered by the Act. *See* RCW 51.32.010, .015, .180.

In return, employers are shielded from the full range of damages available to injured workers under the common law. Even when an employee is killed or seriously injured on the job, the employee is entitled only to workers' compensation benefits, and these benefits are calculated as a lesser percentage of the employee's salary. *See* RCW 51.32.050, .060, .090.

Benefits calculated in this manner by their very nature do not provide full compensation for the damages incurred. At the most, the benefits cover only certain out-of-pocket expenses, such as a portion of lost wages. They cannot take into account noneconomic damages, such as an employee's own pain and suffering or a spouse's loss of consortium.[3] The extent of a spouse's loss of consortium depends in no way upon the employee's salary level.

Employees and their beneficiaries are limited, for the most part, to the receipt of these workers' compensation benefits. An employee cannot sue the employer and neither can the employee's beneficiaries. Thus, an employer is immune from a suit brought by an employee's spouse, not only when the spouse is attempting to recover damages suffered by the employee, but also when the spouse suffers separate and distinct damages, such as a loss of consortium. *See Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d

---

[3]We disapprove of the dictum to the contrary in *Gillis v. Walla Walla*, 94 Wn.2d 193, 196, 616 P.2d 625 (1980), a case construing the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, not the Industrial Insurance Act.

750, 696 P.2d 1238 (1985); *Ash v. S.S. Mullen, Inc.*, 43 Wn.2d 345, 261 P.2d 118 (1953), *overruled on other grounds in Lundgren v. Whitney's Inc.*, 94 Wn.2d 91, 614 P.2d 1272 (1980).

Yet a spouse suffering loss of consortium damages has one additional avenue for recovery. As an exception to the Act's abolition of civil actions, the Legislature enacted RCW 51.24, authorizing employees and their beneficiaries to increase their compensation by suing third parties under traditional tort principles. RCW 51.24.030. If the employee or beneficiary prevails in a third party action, the Department is entitled to a large portion of the recovery. Under RCW 51.24.060(1)(a)-(c), the recovery is divided and distributed in the following order: (1) attorney fees are paid; (2) 25 percent of the balance goes to the plaintiff employee or beneficiary; and (3) the Department "shall be paid the balance of the recovery made, but only to the extent necessary to reimburse the [D]epartment . . . for compensation and benefits paid". Former RCW 51.24.060(1)(c). Any remaining balance is paid to the employee or beneficiary.[4] RCW 51.24.060(1)(d).

■ Allowing these third party actions serves two functions. First, it spreads responsibility for compensating injured employees and their beneficiaries to third parties who are legally and factually responsible for the injury. Because third parties are not part of the compromise underlying the Act, they are not entitled to immunity from civil actions. Second, it permits the employee to increase his or her compensation beyond the Act's limited benefits. *See Maxey v. Department of Labor & Indus.*, 114 Wn.2d 542, 549, 789 P.2d 75 (1990); *see also O'Rourke v. Department of Labor & Indus.*, 57 Wn. App. 374, 382, 788 P.2d 17, *review denied,* 115 Wn.2d 1002 (1990); *Bankhead v. Aztec Constr. Co.*, 48 Wn. App. 102, 107-08, 737 P.2d 1291 (1987).

---

[4]Thereafter, the employee or beneficiary is not entitled to receive additional workers' compensation benefits until the additional benefits equal the remaining balance of the recovery paid to the employee or beneficiary. RCW 51.24-.060(1)(e).

█ Allowing the Department to obtain reimbursement from the proceeds of a third party recovery likewise serves two roles, ensuring that:

(1) the accident and medical funds are not charged for damages caused by a third party and (2) the worker does not make a double recovery. *In other words, the worker, under [the third party statute], cannot be paid compensation and benefits from the Department and yet retain the portion of damages which would include those same elements.*

(Italics ours.) *Maxey*, 114 Wn.2d at 549; *see also Clark v. Pacificorp*, 118 Wn.2d 167, 185, 822 P.2d 162 (1991).

It is the concern over "double recovery" which is at issue here. The Department argues disallowing its right of reimbursement will allow claimants to receive a double recovery because they will receive workers' compensation benefits as well as the undiminished third party recovery.

█ We reject the Department's argument. The italicized language from *Maxey* reveals the fallacy in the Department's position. As *Maxey* demonstrates, the employee receives a double recovery only if the third party recovery is for damages which are already compensated for by workers' compensation benefits. Yet, as we have already discussed, workers' compensation benefits do not compensate employees or their beneficiaries for noneconomic damages such as loss of consortium. Because the Department's payment of benefits does not cover damages for loss of consortium, a beneficiary recovering these damages from a third party does not receive a "double recovery". Rather, workers' compensation benefits compensate for certain damages, and a recovery for loss of consortium compensates for separate damages. *See Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 776, 733 P.2d 530 (1987) (characterizing loss of consortium as an "original injury" which is the subject of a separate and independent cause of action).

█ To the contrary, allowing the Department to reach this recovery would give an unjustified windfall to the State, at the expense of individual beneficiaries. Under the Department's interpretation, the Department would be enti-

tled to share in damages for which it has provided no compensation. We do not interpret statutes to reach absurd and fundamentally unjust results. *See, e.g., Ski Acres, Inc. v. Kittitas Cy.*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992); *In re Swanson*, 115 Wn.2d 21, 28, 804 P.2d 1 (1990).

■ With these principles in mind, we turn to the precise statutory language here at issue. RCW 51.24.060 is phrased in terms of "reimbursing" the Department. The Act itself does not define this term. Absent a contrary legislative intent, we construe statutory language according to its plain and ordinary meaning. *In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986). The term "reimburse" means "to pay back (an equivalent for something taken, lost, or expended) to someone : REPAY". *Webster's Third New International Dictionary* 1914 (1986). Here, the Department did not pay any compensation for loss of consortium. One cannot be "paid back" compensation one never paid in the first place.

Other courts, too, have denied reimbursement from recoveries for loss of consortium. *See generally* 2A Arthur Larson, *Workmen's Compensation* § 74.36 (1988) (citing Michigan, Minnesota and Wisconsin as denying reimbursement, Illinois as allowing reimbursement, and Indiana as allowing reimbursement when the allocation of the third party recovery between loss of consortium claims and other claims is a transparent attempt to avoid reimbursement); *see also Dionne v. Libbey-Owens Ford Co.*, 621 A.2d 414 (Me. 1993).

■ For these reasons, we hold the Department's right of reimbursement does not extend to a spouse's third party recovery for loss of consortium, although on different grounds than did Division Three in *Flanigan*. Division Three concluded third party actions for loss of consortium are not covered by the Act and its exclusivity clause, RCW 51.04.010; therefore, the Department had no statutory right to reimbursement. Under our holding, third party actions for loss of consortium are indeed covered by the Act, but the statutory right of reimbursement under RCW 51.24.060 does not reach these recoveries.

We must also address the issue of attorney fees in the *Downey* case. Miriam Downey requested attorney fees from the trial court. She renewed her request in her brief to the Court of Appeals, and again in her petition for review in this court.

Whether attorney fees are to be awarded in these cases is governed by RCW 51.52.130. *See Carnation Co. v. Hill*, 115 Wn.2d 184, 187, 796 P.2d 416 (1990). The relevant portion of the statute reads as follows:

> **Attorney and witness fees in court appeal.** . . . If the decision and order of the [Board of Industrial Insurance Appeals] is reversed or modified and if the accident fund is affected by the litigation then the attorney's fee fixed by the court for services before the court only . . . shall be payable out of the administrative fund of the department.

RCW 51.52.130.

██ ██ The use of the term "court" in this statute has been interpreted to refer only to superior courts, not to higher courts of appeal. *See Siegrist v. Simpson Timber Co.*, 39 Wn. App. 500, 504, 694 P.2d 1110, *review denied*, 103 Wn.2d 1037 (1985); *O'Brien v. Industrial Ins. Dep't*, 100 Wash. 674, 681, 171 P. 1018 (1918); *Boyd v. Pratt*, 72 Wash. 306, 308, 130 P. 371 (1913). The statute has been amended many times since this interpretation was first given, but none of the amendments have been material to this point. *See Siegrist*, 39 Wn. App. at 504. Accordingly, attorney fees are allowable under RCW 51.52.130 only at the superior court level.

Under RCW 51.52.130, attorney fees are recoverable at the superior court level only if (1) the court reverses or modifies the Board's order, and (2) the litigation affects the accident fund. Because we hold today the Superior Court should have reversed the Board's order, Downey has met the first requirement.

Not as clear is whether the accident fund is affected by our decision. The parties have not briefed whether the accident fund would be affected by a reversal of the Board's decision in this case. According to dictum in one of our

cases, the accident fund is necessarily affected in any case where the employer is insured through the state fund and the court increases employee benefits. *Johnson v. Tradewell Stores, Inc.*, 95 Wn.2d 739, 742, 630 P.2d 441 (1981). If this is indeed true, then a decision denying reimbursement of employee benefits would presumably have this effect as well. Our own review of the Act, however, does not reveal clear support for this proposition. The Act does not expressly state whether the Department's reimbursement in this case would have gone into the accident fund or some other fund.

Accordingly, we remand Downey's case for the Superior Court to make this determination. Because RCW 51.52.130 requires the superior court to fix the amount of the attorney fees, we instruct the parties to address the issue of the effect on the accident fund as part of their arguments regarding the fixing of the fee. If the superior court judge determines the accident fund is affected, then the judge will proceed to determine the proper amount of the attorney fees to be awarded. If the judge determines otherwise, then no attorney fees are to be awarded.

## III

### CONCLUSION

In summary, we affirm the Court of Appeals decision in *Flanigan*. We reverse the Court of Appeals decision in *Downey* and remand the case to the Superior Court for a decision as to attorney fees.

UTTER, BRACHTENBACH, DOLLIVER, and SMITH, JJ., concur.

ANDERSEN, C.J. (concurring in the dissent) — I concur in the result of the dissent. I write separately to underscore my serious concern about the violence the majority opinion visits upon state industrial insurance policy.

Our industrial insurance system is not something that "just happened"; it was carefully and painfully crafted by our State Legislature over a period of many years.

The Attorney General's brief makes these strong points.

This decision will directly or indirectly affect every employee and employer in the state. Both employees and employers pay taxes into the medical aid fund and employers pay taxes into the accident fund. Money reimbursed to the Department of Labor and Industries is paid back into these funds, respectively, and thereby lowers the taxes owed by each group. In addition, the experience rating of the employer of an injured worker is retroactively adjusted based upon the money reimbursed.

Allowing loss of consortium recoveries to be set apart from other third party recoveries eliminates the fund's right to reimbursement to the extent that it remains liable for payment of benefits, or to the extent that other portions of the recovery are insufficient to reimburse the funds for benefits already paid. As we recently declared in *Clark v. Pacificorp*, 118 Wn.2d 167, 184-85, 822 P.2d 162 (1991):

> An elimination of the right to reimbursement is contrary to the longstanding purposes of the Industrial Insurance Act. . . .
>
> . . . The underlying purposes of the act are defeated if the right is eliminated, and the plaintiff may be made more than whole at the expense of the compensation fund.

In Mrs. Flanigan's case, for example, she will receive her loss of consortium award in addition to workers' compensation pension benefits.

The majority's decision also opens the door to abuse and manipulation with respect to the funds' reimbursement from third party recoveries. In the settlement context, parties may allocate the recovery, by agreement, less to the worker and more to the worker's spouse for loss of consortium, in order to defeat the funds' reimbursement right. The worker or beneficiary might then keep a greater portion of the recovery than RCW 51.24.060(1) entitles them to keep, and then may be made more than whole at the expense of the compensation fund.

It may be that the nature of recoveries for loss of consortium damages are of such unique nature that they should be accorded special treatment. If that is so, however, any

response to such uniqueness should be hammered out in the legislative arena wherein public hearings could be afforded and input obtained from labor, management and all others concerned.

For the foregoing reasons, I dissent.

MADSEN, J. (dissenting) — The majority holds that recoveries for loss of consortium and the employee's pain and suffering obtained pursuant to the third party recovery provisions of the Industrial Insurance Act (Act) are not subject to reimbursement. The underlying premise for this conclusion is that workers' compensation benefits compensate injured workers only for economic damages and, thus, only third party recoveries for economic damages should be subject to reimbursement. I disagree.

The majority's reasoning contains a logical inconsistency. The majority recognizes: (1) that the Act is an exclusive remedy; (2) that spouses are beneficiaries under the Act and may not bring a cause of action against an employer; (3) that workers and beneficiaries may proceed under the third party provisions of the Act in order to attain a more full recovery; and (4) that recovery under the third party provisions is subject to reimbursement by the Department of Labor and Industries. Majority, at 423-25. Yet despite this recognition, by stating that the Department of Labor and Industries cannot seek reimbursement from third party recoveries for noneconomic losses, the majority makes a distinction that is not present in the statute.

Simply stated, the Act does not distinguish based on the nature of the damages which flow from the worker's injury. Rather, where the injury is covered, the Act provides sure and certain compensation without regard to the nature of damages arising out of that injury. Where the injury is not compensated by the Act, none of the provisions of the Act apply, including the limitations imposed on actions against third parties. Where the Act does provide compensation to workers or their beneficiaries, the Act is the exclusive rem-

edy. Workers and beneficiaries covered by the Act may seek additional recovery from liable third parties under the Act, but *any recovery* under the third party recovery provisions of the Act is subject to reimbursement by the Department of Labor and Industries to the extent necessary to reimburse the industrial insurance fund. This necessarily includes both economic and noneconomic damages recovered from third parties.

In order to understand why this makes sense, it is necessary to appreciate the nature and extent of the quid pro quo compromise inherent in the Act. Washington's Industrial Insurance Act represents an agreement between labor and industry in which employees and their beneficiaries give up the common law right to sue employers in exchange for guaranteed compensation. Employers assume strict liability for all damages arising out of workplace injuries, but the extent of their liability is limited and measured only in terms of the worker's earning capacity, *i.e.*, economic damages. *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 816-17, 759 P.2d 351 (1988).

The Act is an exclusive remedy for workers injured on the job. *Clark v. Pacificorp*, 118 Wn.2d 167, 174, 822 P.2d 162 (1991). A worker or beneficiary who receives workers' compensation under the Act has no separate remedy for his or her injuries except where the Act specifically authorizes a cause of action. *Bankhead v. Aztec Constr. Co.*, 48 Wn. App. 102, 104, 737 P.2d 1291 (1987). The Act removes all actions arising out of an industrial injury recognized by the Act from private controversy, except those specifically set forth in the Act. RCW 51.04.010 provides in pertinent part:

> The state of Washington . . . declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and *to the exclusion of every other remedy, proceeding or compensation*, except as otherwise provided in this title; and to that end *all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished*, except as in this title provided.

(Italics mine.) RCW 51.04.010. RCW 51.32.010 states further:

> Each worker injured in the course of his or her employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, *such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever*: . . ..

(Italics mine.) RCW 51.32.010.

This court has stated that these two clauses create one of the broadest exclusive remedy provisions in the nation. *West v. Zeibell*, 87 Wn.2d 198, 201, 550 P.2d 522 (1976). The goal of the Act is to provide sure and certain relief to injured workers and their families in lieu of and to the exclusion of all causes of action for all damages arising out of a worker's injury, not to award full tort damages. *Clark*, at 186 n.9; *see generally* Survey of Washington Law, *Wrongful Death-Minor Child*, 12 Gonz. L. Rev. 561, 567-68 (1976-1977).

The majority acknowledges the breadth of this exclusivity in the context of an employer when it states that "employers are shielded from the full range of damages available to injured workers under the common law". Majority, at 423. The majority acknowledges further that, "[e]ven when an employee is killed or seriously injured on the job, the employee is entitled only to workers' compensation benefits, and these benefits are calculated as a lesser percentage of the employee's salary." Majority, at 423. The majority also states that workers and their beneficiaries are precluded, under the Act, from seeking further damages from the employer. "An employee cannot sue the employer and neither can the employee's beneficiaries." Majority, at 423. However, despite this recognition, the majority refuses to acknowledge the application of the broad exclusionary language of RCW 51.04.010 and RCW 51.32.010 to the area of third party liability. The majority fails to appreciate how integral the third party reimbursement provisions are to the overall operation of workers' compensation.

Third party litigation under the Act is governed by RCW 51.24. This chapter has undergone many transformations

since its adoption in 1911; however, from its inception, the chapter was meant to provide two basic benefits: (1) to enable the injured worker to be more fully compensated; and (2) to require liable third parties to bear the cost to the industrial fund.

It is important to fully appreciate the importance of this second benefit. Inherent in RCW 51.24 is the legislative intent that industrial insurers should not bear the cost of industrial accidents caused by third parties. This is the essence of the quid pro quo compromise: the employer provides sure and certain relief in the form of strict liability in exchange for limitations on that liability and immunity from suit by workers and their beneficiaries. This objective of limited liability to the employer is frustrated if the employer is forced to bear the cost of accidents caused by third parties. In such a case, the injured worker achieves a full recovery at the expense of the industrial insurer and the industrial insurance fund, despite the fact that the third party was liable. In order to avoid this consequence, the Legislature provided that the Department may reimburse the industrial insurance fund with the proceeds of third party actions under the Act. This intent is apparent in the history of third party recovery under the Act.

In the 1911 version of RCW 51.24, the worker was given two options: (1) the worker could accept workers' compensation benefits and assign any right of action against third parties to the Department; or (2) the worker could pursue the action against third parties, being solely responsible for the litigation expense, and forgo any benefits under the Act. Laws of 1911, ch. 74, § 3, p. 348. Under the latter option, the Department was still required to pay where the third party recovery was deficient.

In 1957, the Legislature amended the statute to allow workers to receive industrial benefits and at the same time pursue the third party claim. If the worker obtained a recovery, the benefit provider was reimbursed fully for the cash value of the benefits received pursuant to a statutory lien. Again, the Act accorded the worker benefits where the

recovery was deficient. Laws of 1957, ch. 70, § 23, p. 279. In 1961, the Legislature amended RCW 51.24 to allow the benefit provider to share in litigation costs to the extent that it benefited from recovery. Laws of 1961, ch. 274, § 7, p. 2243.

Under these early versions of the statute, if the lien equaled or exceeded the gross recovery, the benefit provider would take the entire recovery. The Act, thus, provided no incentive for the worker to pursue third party recovery unless assured of a substantial excess recovery. Then, in 1977, the Legislature amended the Act to provide the worker with 25 percent of the recovery remaining after attorney fees, the remainder being subject to reimbursement. Laws of 1977, 1st Ex. Sess., ch. 85, § 4, p. 365. This provided workers with incentive to pursue third party claims even where recovery would be less than the amount of the statutory lien.

In its current form, the Act permits compensated workers or their beneficiaries to proceed against third parties without precluding the worker from receiving benefits. RCW 51.24.020; *Clark*, at 174. Further, where the worker elects to pursue the third party, the worker is guaranteed 25 percent of the recovery remaining after attorney fees and costs, thus providing an incentive for the worker to pursue third party claims. RCW 51.24.060(1)(b). The Department is then entitled to seek reimbursement from the remaining recovery in the amount of benefits paid. RCW 51.24.060(1)(c). If the third party recovery exceeds these benefits, the worker is entitled to the remainder. RCW 51.24.060(1)(d). The amount of the excess recovery, however, must be expended by the worker in medical costs and other benefits before payment by the Department can be reinstated. RCW 51.24.060(1)(e); *Clark*, at 175.

RCW 51.24.030 governs actions against third parties and provides in pertinent part:

> (1) If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.

. . . .

(3) For the purposes of this chapter, "injury" shall include any physical or mental condition, disease, ailment or loss, including death, for which compensation and benefits are paid or payable under this title.

RCW 51.24.030.

RCW 51.24.060 governs apportionment of the proceeds of third party actions brought by workers or their beneficiaries and provides, in pertinent part:

(1) If the injured worker or beneficiary elects to seek damages from the third person, any recovery made shall be distributed as follows:

(a) The costs and reasonable attorneys' fees shall be paid proportionately by the injured worker or beneficiary and the department and/or self-insurer;

(b) The injured worker or beneficiary shall be paid twenty-five percent of the balance of the award: PROVIDED, That in the event of a compromise and settlement by the parties, the injured worker or beneficiary may agree to a sum less than twenty-five percent;

(c) The department and/or self-insurer shall be paid the balance of the recovery made, but only to the extent necessary to reimburse the department and/or self-insurer for compensation and benefits paid;

. . . .

(d) Any remaining balance shall be paid to the injured worker or beneficiary;

(e) Thereafter no payment shall be made to or on behalf of a worker or beneficiary by the department and/or self-insurer for such injury until the amount of any further compensation and benefits shall equal any such remaining balance. Thereafter, such benefits shall be paid by the department and/or self-insurer to or on behalf of the worker or beneficiary as though no recovery had been made from a third person;

. . . .

(2) The recovery made shall be subject to a lien by the department and/or self-insurer for its share under this section.

RCW 51.24.060.

Under these provisions, "*any recovery*" by an injured worker or beneficiary under the third party chapter is subject to a lien by the Department in order to reimburse the insurer in the amount of the cash value of compensation and benefits already paid. RCW 51.24.060. (Italics mine.) This is true whether the action is maintained by the worker or whether,

upon the death of the worker, the action survives to the worker's personal representative who maintains it on behalf of the worker's estate. *Bankhead*, at 103-04.[5]

It must be emphasized that the third party recovery provisions of the statute make *no distinction* between economic and noneconomic damages. The Act consistently refers to third party recoveries in terms of the amount rather than the nature. Where a worker or beneficiary pursues a liable third party under the Act, "*any recovery made* shall be distributed" in accordance with the provisions of the Act. (Italics mine.) RCW 51.24.060(1). Further, "[t]he injured worker or beneficiary shall be paid twenty-five percent of the *balance* of the award". (Italics mine.) RCW 51.24.060(1)(b). Where a third party recovery is greater than the amount of litigation costs and the worker's 25 percent combined, the statute directs that the Department "shall be paid the *balance* of the recovery made". (Italics mine.) RCW 51.24.060(1)(c). "Any remaining *balance* [after reimbursement] shall be paid to the injured worker or beneficiary". (Italics mine.) RCW 51.24.060(1)(d). Finally, where the third party recovery exceeds the total of benefits paid leaving an excess balance, the Department will not reinstitute payment of benefits, "until *the amount* of any further compensation and benefits *shall equal any such remaining balance*." (Italics mine.) RCW 51.24.060(1)(e).[6]

---

[5]Noteworthy is that RCW 51.24.060 is consistent with RCW 51.24.020 which provides:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any *damages in excess of compensation and benefits paid* or payable under this title.

(Italics mine.) RCW 51.24.020. This section makes no mention of the nature of damages recovered from the employers, but rather is written only in terms of the amount of the compensation and benefits.

[6]This is likewise the case under the Federal Employees' Compensation Act (FECA). 5 U.S.C. § 8132. FECA does not confine the United States' right of reimbursement to specific types of damages. Instead, FECA creates a general right of reimbursement that applies without regard to whether employees' third party recovery includes losses that are excluded from FECA coverage. Accordingly the United States may recover reimbursement for the amount of benefits paid from

Clearly then, reimbursement is based on the *amount* rather than the *nature* of the recovery. Recoveries that include considerations for pain and suffering, loss of consortium, or other damages not contemplated by, or compensated for, under the Act *are* subject to reimbursement. When the Department considers third party recoveries for reimbursement purposes, it is concerned only with the *amount* of recovery remaining after attorney fees and the worker's 25 percent are deducted.[7] This is consistent with the quid pro quo compromise inherent in the Act. To the extent that the Act provides workers' compensation benefits to injured workers in lieu of all other causes of action, it represents compen-

---

third party recoveries, even where the third party recovery only compensates the employee for noneconomic losses. *United States v. Lorenzetti*, 467 U.S. 167, 81 L. Ed. 2d 134, 104 S. Ct. 2284, *remanded without opinion*, 740 F.2d 957 (3d Cir. 1984); *Green v. United States Dep't of Labor*, 775 F.2d 964 (8th Cir. 1985); *Ostrowski v. Roman Catholic Archdiocese*, 479 F. Supp. 200 (S.D. Mich. 1979), *aff'd sub nom. Ostrowski v. United States Dep't of Labor, Office of Workers Comp. Programs*, 653 F.2d 229 (6th Cir. 1981); *United States v. Hayes*, 254 F. Supp. 849 (W.D. Ky. 1966).

[7]In order to assist claimants in determining what portion of a third party is subject to reimbursement, the Department has devised third party recovery worksheets. Workers or beneficiaries must complete these worksheets as a part of bringing an action against a third party under the Act. The original version of this worksheet contained the following option:

I elect to seek damages from the third party responsible for the accident as described above [in the section naming such party]. I understand the Department has a statutory lien against the proceeds of any recovery as a result of this action for the purpose of reimbursing the state fund for any benefits paid to or on my behalf under my claim. I further agree to keep the department informed of the progress and results of this action and otherwise comply with the provisions of chapter 51.24 RCW.

Department of Labor and Industries, *Third Party Election Form*, Election A.

Where a worker elects to pursue this option on the form, the worker must write down the "gross recovery" which is the present cash value of the procured settlement or verdict. From this amount, the worker must subtract litigation costs which results in a "net recovery". Finally, this net recovery is reduced by the worker's 25 percent allocation. This remaining amount is subject to reimbursement in the amount of the benefits and compensation afforded the worker. RCW 51.24.060. The worker need not inform and the Department does not inquire as to the nature of the recovery or how much of any recovery is attributable to economic damages and noneconomic damages.

sation for *all* damages attendant to the worker's injury, including both economic and noneconomic loss.

This proposition is also supported by this court's interpretation of the Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF) in *Gillis v. Walla Walla,* 94 Wn.2d 193, 616 P.2d 625 (1980). Not surprisingly, the majority takes exception to this case. Majority, at 423 n.3.

In *Gillis,* a firefighter received benefits under LEOFF but pursued an additional action against his employer for noneconomic damages. Like the Industrial Insurance Act, LEOFF provides "sure and certain relief" to firefighters and law enforcement officers in exchange for limiting actions at law against government employers. RCW 41.26.270. LEOFF also provides an exception to the Act's ban on legal action by allowing firefighters and law enforcement officers to seek additional compensation from their employers where the injury is due to the intentional or negligent act or omission of the employer. RCW 41.26.281. Damages awarded by way of this exception are in lieu of compensation paid under the Act, and benefits are reduced according to the amount of damages recovered. RCW 41.26.281.

As in this case, the firefighter argued that the statutory scheme could not reduce his recovery for pain and suffering because LEOFF did not specifically provide compensation for that damage. *Gillis,* at 196. This court rejected his argument. It explained that application of the recovery reduction scheme did not depend on the nature of the disability benefits provided. The *Gillis* court compared LEOFF to the Industrial Insurance Act:

> First, [LEOFF] limits recovery to any excess damages over the amount "received or *receivable* under this chapter." . . . We do not interpret this statutory language as indicating a limitation as to the nature or type of disability benefits awarded under LEOFF. To the extent LEOFF provides disability benefits, the award, like workers' compensation benefits, represents compensation for *all* components attendant to an injury, including both economic and noneconomic (*i.e.,* pain, suffering, disability and disfigurement) loss. Although the statutory scheme employs an economic formula for computing LEOFF disability benefits, it only does so as an efficient

means of providing "sure and certain relief for injuries". RCW 41.26.270. Beyond this basic coverage, a member is entitled to additional recovery only if injury or death has resulted from the employer's intentional or negligent act or omission. RCW 41.26.280.

(Footnote omitted.) *Gillis*, at 196-97. The court explained that, if it had adopted the firefighter's reasoning, only those injured because of the employer's intentional or negligent act would be able to receive compensation for pain and suffering. Moreover, such an interpretation of the Act would not grant the employer the protection that the Act was designed to provide. *Gillis*, at 197-98.

This same reasoning applies in the instant case. Under the majority's rationale, only those injured by liable third parties would be able to receive compensation for noneconomic losses. Contrary to the majority's assertions, since the initial compensation provided under the Act represents all damages stemming from the worker's injury, the party receiving noneconomic damages would in essence receive a double recovery. In such an event, the party not only receives sure and certain relief from the employer, but also recovers for noneconomic damages. This occurs at the employer's expense which is forced to deplete its workers' compensation fund even though a third party is liable.

It is apparent that the majority's conclusion stems in part from a blurring of the terms "injury" and "damages". The majority acknowledges that one of the purposes of the third party recovery provisions is to prevent double recovery by a worker at the expense of the industrial insurance fund. At one point, the majority states that "the employee receives a double recovery only if the third party recovery is for damages which are already compensated for by workers' compensation benefits". Majority, at 425. This statement is incorrect. Although this language bears a striking resemblance to the language of the Act, the Act refers to recoveries for a worker's "injury", not "damages". Under the Act, the third party recovery provisions apply only to "worker's *injury* for which benefits and compensation are provided".

(Italics mine.) RCW 51.24.030. Again, the statute does not make a distinction based on the nature of an award or the nature of damages but rather is based solely on the status of the recipient and the amount of the recovery.

In its analysis, the majority cites *Maxey v. Department of Labor & Indus.*, 114 Wn.2d 542, 549, 789 P.2d 75 (1990) for the proposition that only those portions of third party recoveries representing economic damages are subject to reimbursement.

In *Maxey*, the worker obtained a third party recovery under RCW 51.24.030. The controversy concerned competing claims by the Internal Revenue Service (IRS) and the Department to funds recovered under the third party provisions of the Act. The issue before the court was whether the Department had "an exclusive property interest in its statutory share of the recovery pursuant to RCW 51.24.060" or whether the injured worker had a property interest in the funds to which an IRS lien might attach. *Maxey*, at 544 (quoting order by Judge Justin L. Quackenbush, at 2-3).

This court reasoned that the award was recovered under the auspices of RCW 51.24.030 and that the reimbursement provisions of the Act governed distribution of the recovery. *Maxey*, at 544. Accordingly, the court stated:

> We hold that the worker has no property right or interest in the [recovery] to the extent of the amount that the Department is to be reimbursed. The Department has a vested right thereto by virtue of the mandatory distribution which must be made to it under RCW 51.24.060(1)(c).

*Maxey*, at 545. Deferring to the statutory distribution scheme, the court noted that, after attorney fees and costs, the worker had an absolute property right to 25 percent of the balance of the recovery. Thereafter, "the Department has *an unqualified, unrestricted right to all of the balance to the extent of the amount of compensation and benefits paid* and payable." (Italics mine.) *Maxey*, at 546. In its conclusion, the court stated further:

> The third party statute accomplishes two things. First, it makes it possible for the worker to recover full compensation

from the party which is legally and in fact responsible for his injuries and consequent damages. Second, it permits the worker to receive the certain compensation and benefits of industrial insurance, but mandates reimbursement to the Department so that (1) the accident and medical funds are not charged for damages caused by a third party and (2) the worker does not make a double recovery. *In other words, the worker, under [the third party statute], cannot be paid compensation and benefits from the Department and yet retain the portion of damages which would include those same elements.*

(Italics mine.) *Maxey*, at 549.

The majority construes the italicized portion of the above quote to mean that the Department may seek reimbursement for compensation "only if the third party recovery is for *damages* which are already compensated for by workers' compensation benefits". (Italics mine.) Majority, at 425. The majority then reasons that, since "the Department's payment of benefits does not cover *damages* for loss of consortium, a beneficiary recovering these *damages* from a third party does not receive a 'double recovery' ". (Italics mine.) Majority, at 425.

The majority fails, however, to acknowledge the remainder of the paragraph where the court states the following:

To allow the IRS claim against the Department's reimbursement would amount to a double recovery. The worker has received compensation and benefits from the Department. He has recovered an *equivalent amount* from the third party. Permitting use of the reimbursement funds to pay the worker's creditors ahead of the Department is a double recovery not contemplated or authorized by the statute.

(Italics mine.) *Maxey*, at 549. Clearly, the court is not referring to the nature of the recovery or the nature of the damages. Rather, the court refers to the right of reimbursement in terms of the amount of recovery only: first, attorney fees and costs are accounted for; then 25 percent of the recovery goes to the worker as incentive; and the rest goes to reimburse the fund to the extent of the *amount* of benefits and compensation paid. The worker "cannot be paid compensation and benefits from the Department and yet retain the portion of damages which would include those

same elements [the compensation and benefits]". *Maxey*, at 549. The Act is, therefore, concerned with the *amount*, not the *nature*, of the benefits and compensation paid.

If, as the majority appears to hold, loss of consortium is an injury not compensated by the Act, then the Act simply would not apply. This is the factual scenario that occurred in *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 816-17, 759 P.2d 351 (1988) and *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989).

In *McCarthy*, the worker's injury, a pulmonary disease, was not a recognized injury under the Act. The worker, McCarthy, pursued a claim against her employer outside the Act. She argued that her claim was not excluded by the Act because her injury was not covered and because she was not a beneficiary for purposes of the Act. *McCarthy*, at 817. In making its decision, the *McCarthy* court expressly recognized the "quid pro quo" compromise inherent in the Act:

> [T]he employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.

*McCarthy*, at 817 (quoting 2A A. Larson, *Workmen's Compensation* § 65.40, at 12-41 (1987)); *see also Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 57, 821 P.2d 18 (1991).

In *Reese*, similarly, the Act did not recognize or compensate the worker's injury, handicap discrimination by Sears. Since the Act did not provide relief for employment discrimination there was no quid pro quo and the exclusive remedy provisions did not apply with regard to that injury. In other words, there was no quid pro quo. *Reese*, at 571, 573.[8]

---

[8]Noteworthy is the fact that, in *Reese*, the handicap which led to the discrimination was caused by a workplace injury. However, there is a difference between the separate discrimination injury in *Reese* and the separate loss of consortium injuries in the cases at hand. The difference is that employment discrimination is a distinct and separate injury caused by the employer. Loss of consortium and pain and suf-

Under *McCarthy* and *Reese,* if loss of consortium was a separate and distinct injury not compensated by the Act, then the claimant could proceed unencumbered by the Act. The majority admits, however, that the Act precludes actions for loss of consortium against the employer. Majority, at 423. These propositions are logically inconsistent.

Finally, the provisions of the Act authorizing the Department to settle claims under the Act also support the notion that all damages awarded under the third party recovery provisions of the Act are subject to reimbursement. RCW 51.24.050(7) provides in pertinent part:

(7) When the cause of action has been assigned to the self-insurer and compensation and benefits have been paid and/or are payable from state funds for the same injury:

(a) The prosecution of such cause of action shall also be for the benefit of the department to the extent of compensation and benefits paid and payable from state funds;

(b) Any compromise or settlement of such cause of action which results in less than the entitlement under this title is void unless made with the written approval of the department;

(c) The department shall be reimbursed for compensation and benefits paid from state funds;

(d) The department shall bear its proportionate share of the costs and reasonable attorneys' fees incurred by the self-insurer in obtaining the award or settlement; and

(e) Any remaining balance . . . shall be applied, . . . to reduce the obligations of the department and self-insurer to pay further compensation and benefits in proportion to which the obligations of each bear to the remaining entitlement of the worker or beneficiary.

RCW 51.24.050(7).

If, as the majority posits, noneconomic losses such as loss of consortium or pain and suffering are not compensated by the Act, then the Department would have no authority to settle such claims. The apportionment provisions, however, draw no distinction based on the nature of the damages recovered. *See Ebsary v. Pioneer Human Servs.,* 59 Wn. App. 218, 796 P.2d 769 (1990).

---

fering, on the other hand, are dependent on and derivative from the underlying industrial injury. They require no additional act on the part of the employer and are inherently derivative from the industrial injury.

In *Ebsary*, a deceased worker's widow received workers' compensation benefits from the Department of Labor and Industries. The Department recognized the potential for third party recovery and asked Ebsary to either bring a claim of her own or to assign the claim to the Department pursuant to RCW 51.24.050. When Ebsary did not make such an election, the claim was assigned to the Department as a matter of law and Ebsary was appointed as special administrator. *Ebsary*, at 221.

Thereafter, the Department filed a third party action for wrongful death and *her emotional distress caused by seeing her husband die* through Ebsary as special administrator. Ebsary's two adult nonbeneficiary children also brought separate actions for loss of consortium and loss of support and the claims were joined for purposes of judicial economy. *Ebsary*, at 222. The Department informed the children that it would only settle their claims with their consent, but asserted that the children could not seek a separate settlement of their individual claims. *Ebsary*, at 222.

Despite numerous attempts, the parties eventually agreed that the Department's assigned claim and the children's claims would have to be settled separately. The Department met separately with the defendants and agreed on a settlement. It was apparent that the defendants intended this settlement to extinguish as much of the children's claims as possible and that the Department was not attempting to settle the children's claims. *Ebsary*, at 223, 225. After a hearing, a trial court ruled that the children had a right to pursue their own independent claims. The court also held that it would vacate the settlement if the children elected to do so and that the Department had no authority to settle the children's claims. *Ebsary*, at 223-24.

Division One of the Court of Appeals upheld the trial court's decision. The court reasoned that the Department's interest was limited to making a recovery to replenish the workers' compensation accident fund.

In this case, Rosa Ebsary's claims against Pioneer and DOC were assigned by operation of law pursuant to RCW 51.24.070

when Rosa declined to make a voluntary assignment. Thus, the only purpose of the assignment was replenishing of the state accident fund. The assignment did not and could not affect the claims of the Ebsary children because neither of them received workers' compensation benefits. It follows that if DLI had attempted to settle the children's claims, it would have been acting without authority.

*Ebsary*, at 225. If noneconomic damages were separate and not intended to be compensated by the Act, then the Department would not have authority to settle such claims. Yet, in *Ebsary*, the Department settled the widow's claims for noneconomic damages.

The logical reading of the cases in this area, together with the plain language of the Act, is that sure and certain workers' compensation benefits are meant to compensate for *all damages* arising out of the industrial injury including noneconomic damages such as loss of consortium. Where the Act applies, it is an exclusive remedy and provides sure and certain compensation to injured workers in lieu of all damages arising out of that injury. Such workers and beneficiaries may seek additional recovery from liable third parties, but *any recovery* is subject to reimbursement by the Department, including noneconomic damages. Contrary to the majority's holding, neither the Act, nor the case law, distinguishes between economic damages and noneconomic damages.

A resolution such as that proposed by the majority endangers the industrial insurance fund and improperly forces the innocent employer to bear the cost for the actions of a responsible third party.

DURHAM and GUY, JJ., concur with MADSEN, J.

Reconsideration denied May 19, 1994.